PEOPLE v BYRD

Docket No. 68126. Submitted December 8, 1983, at Lansing.—Decided
    April 16, 1984. Leave to appeal applied for.

    Sharmon L. Byrd was convicted of one count of first-degree
    criminal sexual conduct and one count of second-degree crimi-
    nal sexual conduct by a jury in Saginaw Circuit Court and was
    sentenced, Hazen R. Armstrong, J. Defendant appeals. *Held:*

        1. The defendant's contention that he was denied his due
    process right to fair trial when the trial court, in supplemental
    jury instruction, instructed on a theory which had not been
    charged in the information nor argued at trial is rejected.
    Defense counsel made no objection to the supplemental instruc-
    tion and the giving of the instruction did not prejudice defen-
    dant.

        2. Defendant's right to effective assistance of counsel was not
    violated by defense counsel's failure to object to the giving of
    the supplemental instruction.

        3. The trial court did not abuse its discretion in denying
    defendant's motion for a separate trial.

        4. Although the trial court may have erred in allowing

REFERENCES FOR POINTS IN HEADNOTES

[1, 8] 65 Am Jur 2d, Rape §§ 3, 17, 28, 63.
    70 Am Jur 2d, Sodomy §§ 5, 14.
    What constitutes penetration in prosecution for rape or statutory
        rape. 76 ALR3d 163.
[2, 3] 5 Am Jur 2d, Appeal and Error §§ 623, 891.
[3] 21A Am Jur 2d, Criminal Law § 985. Modern status of rules and
        standards in state courts as to adequacy of defense counsel's
        representation of criminal client. 2 ALR4th 27.
[4, 5, 7] 75 Am Jur 2d, Trial § 17 *et seq.*
    Antagonistic defenses as ground for separate trials of codefendants
        in criminal case. 82 ALR3d 245.
[5-7] 5 Am Jur 2d, Appeal and Error §§ 774, 778.
[7] 5 Am Jur 2d, Appeal and Error § 781.
[8] 31 Am Jur 2d, Expert and Opinion Evidence §§ 99, 103, 104.
[9] 5 Am Jur 2d, Appeal and Error § 624 *et seq.*
[9, 11] 75 Am Jur 2d, Trial §§ 258, 259.
[10] 75 Am Jur 2d, Trial § 251 *et seq.*

certain hearsay testimony of witnesses, the error, if any, was harmless.

5. It was not error for the trial court to allow the examining physician's testimony that, in his expert opinion, the complainant had experienced a fairly significant assault.

6. The prosecutor's misstatement of certain evidence during closing argument does not require reversal of defendant's convictions. Defense counsel failed to object to the misstatement, the statements were made in good faith, and defendant was not prejudiced thereby.

Affirmed.

1. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — THIRD-DE-GREE CRIMINAL SEXUAL CONDUCT.

First-degree criminal sexual conduct is in essence an aggravated third-degree criminal sexual conduct; the higher offense requires proof of sexual penetration accompanied by proof that the victim was under 13 years of age or that the victim was under 16 years of age but a member of the same household or that the penetration occurred during another felony or that the defendant was aided or abetted (under certain circumstances) or that the defendant was armed or that the victim suffered personal injury (MCL 750.520b, 750.520c; MSA 28.788[2], 28.788[3]).

2. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.

The Court of Appeals generally will not reverse a trial court's decision as a result of an error in jury instructions where no objection to the instructions was raised at trial; jury charges are assessed in their entirety and unobjected to error is not ground for reversal except upon a showing of manifest injustice or that the charge omits an essential component of an offense.

3. CRIMINAL LAW — JURY INSTRUCTIONS — ASSISTANCE OF COUNSEL.

The failure of a defense counsel to object to a jury instruction which in effect created an extra hurdle for the prosecution is questionable grounds for an ineffective assistance of counsel claim because the failure to object would not be an outcome-determinative mistake.

4. CRIMINAL LAW — TRIAL — JOINDER.

There is a strong public policy favoring joint trials in the interest of justice, judicial economy, and administration; the general rule is that criminal defendants do not have an absolute right to a separate trial; however, severance is necessary where the defenses are antagonistic, *i.e.,* where each of two codefendants

claims himself to be innocent by reason of the fact that the other is the guilty party and the joint trial permits the prosecutor to pit one defendant against the other.

5. CRIMINAL LAW — TRIAL — JOINDER.

The decision to hold a joint trial is within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion.

6. CRIMINAL LAW — TRIAL — SEPARATE TRIALS — PREJUDICE.

There must be an affirmative showing of prejudice to substantial rights of an accused before a trial court's decision regarding his motion for a separate trial will be found to constitute an abuse of discretion.

7. CRIMINAL LAW — TRIAL — SEPARATE TRIALS — PREJUDICE.

A defendant, when moving for severance, must clearly, affirmatively, and fully show that he has substantial rights which will be prejudiced by a joint trial, and a conclusory statement of antagonistic defenses must be supported by an affidavit defining the inconsistencies between the defenses.

8. CRIMINAL LAW — RAPE — EXAMINING PHYSICIAN.

The examining physician in a criminal sexual conduct case is a proper witness as long as his testimony may assist the jurors in their determination of the existence of certain elements of the offense charged; the doctor may not testify that the complainant was raped by the defendant on the alleged date, nor may he render an opinion as to the complainant's veracity.

9. CRIMINAL LAW — APPEAL — PROSECUTORIAL COMMENT.

Appellate review of a prosecutor's alleged misstatements regarding the evidence during closing argument is precluded by the lack of an objection at trial unless a miscarriage of justice would result from a failure to review the question.

10. TRIAL — EVIDENCE — FACTS NOT IN RECORD.

An attorney may not argue or refer to facts not of record.

11. CRIMINAL LAW — TRIAL — PROSECUTORIAL COMMENT — MISSTATEMENT OF THE EVIDENCE.

Misstatements of the evidence by a prosecutor should not be held prejudicial if they are made in good faith and, when fairly construed, appear not to have been such as would influence the jury adversely to the rights of the accused.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Kay F. Pearson,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek),* for defendant on appeal.

Before: M. J. KELLY, P.J., and CYNAR and J. C. KINGSLEY,* JJ.

PER CURIAM. Defendant appeals as of right his conviction after jury trial of one count of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(d); MSA 28.788(2)(1)(d), and one count of second-degree criminal sexual conduct, MCL 750.520c(1)(d); MSA 28.788(3)(1)(d). Defendant was sentenced to concurrent terms of 12 to 20 and 9 to 15 years.

Original charges for CSC and kidnapping were brought against defendant, William Byrd, Leslie Grant (Tank), and Lee Grant. Subsequently, Lee and Leslie Grant entered guilty pleas. Attorney Thomas Frank was retained as counsel for defendant and William Byrd, defendant's brother. Prior to trial Frank raised several motions, including a request for separate trials. The trial court took the severance motion under advisement, but ultimately denied the motion. Attorney Frank then filed a motion to withdraw as counsel for both defendant and William Byrd. The trial court granted Frank's motion to withdraw as counsel for William Byrd and retained Frank as counsel for defendant.

Prior to trial, counsel for William Byrd, joined by defendant's counsel, moved for separate trials. The trial court denied the motion.

* Circuit judge, sitting on the Court of Appeals by assignment.

The complainant testified that on April 4, 1981, between 7 and 8 p.m. she was hitchhiking from Bay City to Petoskey, standing near the highway at a point where I-75 and M-23 intersect. A dark green car with a loud muffler stopped and picked her up. There were four occupants in the car, who identified themselves to complainant. Lee Grant was the driver. Codefendant William Byrd was the right front seat passenger. Complainant got into the back seat of the car and sat in the middle with defendant on her left and Tank on her right. Complainant stated that she listened and sang along to music on the car radio and smoked cigarettes and marijuana.

As they then drove on, complainant testified that defendant touched her hair and said he was going to make love to her. Complainant said she answered, "No you're not." Desiring at this point to get out of the car, complainant told the men that she had to go to the bathroom. Defendant then said, "you can have it the hard way or the easy way", and he touched her leg and reached under her dress. Complainant testified that she screamed and that defendant and Tank laughed and reached to pull her underwear off. When complainant protested, defendant told Tank to show her a knife. No actual knife was shown at that time. Complainant's underwear was then removed by her or the men, and defendant attempted unsuccessfully to have sexual intercourse with her.

After complainant smoked a cigarette, defendant and William Byrd pulled her legs apart and defendant took a lighter and held it up to her vagina. Defendant then put his finger into her vagina. Complainant testified that Tank and defendant then made her touch their penises with her hand.

At length the group stopped at a school, ostensibly to allow complainant to relieve herself. The driver, Lee Grant, hung onto complainant as they approached the school and descended a flight of stairs to a janitorial area. Complainant testified that Tank and defendant held her legs while Lee had sexual intercourse with her. Complainant screamed, Lee hit her several times, and she broke away and ran across a field. She stated that Lee then tackled her, and that Tank and William Byrd held her legs while Lee again had sexual intercourse with her. Defendant and Tank then followed suit. While Tank was having sexual intercourse with complainant, the other men drove up in the car and threw out complainant's clothes. Complainant eventually managed to effect an escape.

The assailants' car became stuck in the mud near the school and was abandoned. Investigating officers located the vehicle and determined that it was registered to Lee Grant. Found near the rear of the school were a pair of underwear, a brown bag containing pajamas, and envelopes and papers bearing the complainant's name. Lee and Leslie Grant were arrested that evening, and William Byrd was picked up two days later.

Defendant turned himself in to the state police, was arrested, and made a statement. In defendant's statement he acknowledged that he was in the car with the Grants and William Byrd and that they picked up complainant while she was hitchhiking. According to defendant's statement, he and complainant laughed and joked with them and defendant held complainant around the neck as she held his penis. Defendant stated that complainant told the men that they could do anything they wanted with her as long as they did not hurt

her and that they never threatened her at any time. Defendant stated that he, Tank, and Lee Grant had sex with complainant. Defendant testified that complainant wanted to have sex with him, that he never threatened her or hit her, and that she did not resist.

Defendant first contends that he was denied his due process right to fair trial when the lower court, in supplemental jury instructions, instructed on a theory which had not been charged in the information nor argued at trial. We agree that the supplemental instructions contained a defect, but we do not find cause for reversal.

In *People v Petrella,* 124 Mich App 745, 762; 336 NW2d 761 (1983), we observed that first-degree CSC is in essence an aggravated third-degree CSC. The higher offense requires proof of sexual penetration accompanied by proof that the victim was under 13 years of age, that the victim was under 16 years of age but a member of the same household, that the penetration occurred during another felony, that the defendant was aided or abetted (under certain circumstances), that the defendant was armed, or that the victim suffered personal injury. MCL 750.520b(1); MSA 28.788(2)(1), *Petrella, supra,* pp 762-763. The theory under which the prosecution alleged first-degree CSC, both at trial and in the information, was that defendant was aided or abetted by other persons and used force or coercion to accomplish the penetration.

The court's giving of the original instructions on the charged CSC offenses and their lesser-included offenses was uneventful. However, after the jury had deliberated for a period of time, it asked to be instructed once again as to the elements of those offenses. When the judge repeated his instructions on first-degree CSC, he included an extra element:

"Now, then, also that the defendant caused personal injury to the complainant. Now personal injury means a bodily injury. It also includes any disfigurement, chronic pain, pregnancy, loss or impairment. And mental anguish, by the way, means suffering which occurs at the time of the alleged act."

In explaining the difference between first-degree and third-degree CSC, the court stated "the third has the same elements as this with the exception of one thing. And that is without personal injury." One of the jurors then indicated that he was confused about the term "mental anguish". The trial court explained once again that "mental anguish means suffering which occurs at the time of the alleged act".

Defense counsel made no objection to the supplemental instruction. Where no objection to erroneous instructions is made at trial this Court will not reverse absent a showing of manifest injustice or that the charge omits an essential component of an offense. *People v Biegajski,* 122 Mich App 215, 227; 332 NW2d 413 (1982), *lv den* 417 Mich 1080 (1983); *People v Crawford,* 89 Mich App 30, 36; 279 NW2d 560 (1979); *People v Dixon,* 84 Mich App 675; 270 NW2d 488 (1978), *lv den* 405 Mich 837 (1979).

Defendant argues that when the trial court added the personal injury element in its supplemental instructions it was providing the jury with an alternate theory for conviction of first-degree CSC. Both in its initial and supplemental instructions, however, the trial court included the aiding and abetting element as an essential element of first-degree CSC. Thus, rather than providing the jury with an alternate theory of convicting defendant of first-degree CSC, the trial court in its supplemental instructions gave the charged offense

an added element of personal injury to the complainant. Because the instruction placed an additional burden on the prosecutor, there was no prejudice to defendant. See *People v Love,* 91 Mich App 495, 503; 283 NW2d 781 (1979).

This result obviates any need to consider defendant's challenge to the court's definition of "mental anguish" included in its instruction on personal injury. Compare *People v Gorney,* 99 Mich App 199; 297 NW2d 648 (1980), *lv den* 410 Mich 911 (1981), with *People v Jenkins,* 121 Mich App 195; 328 NW2d 403 (1982). Review of this corollary issue would have been inappropriate in any event, given defense counsel's failure to object.

Defendant suggests in the alternative that we consider whether the failure of his trial counsel to object to the supplemental jury instructions denied defendant his right to effective assistance of counsel under the "big mistake" standard of *People v DeGraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969). However, the failure to object to an instruction which in effect creates an extra hurdle for the prosecution is questionable grounds for an ineffective assistance claim and would, of course, not be an outcome-determinative mistake.

Defendant next asserts that the trial court erred in failing to order that defendant and William Byrd be separately tried. Attorney Frank had moved for separate trials while still the attorney of record for both men. The trial court denied that motion in a written opinion, noting that the defendants had failed to make the "required affirmative showing of prejudice". Attorney Frank then moved to withdraw as joint counsel and subsequently filed an affidavit stating that William Byrd could assume a trial posture that if any crime took place it was committed only by defendant. The court per-

mitted Frank to withdraw as counsel for William Byrd, citing "a definite possibility of antagonistic defenses". On the first day of trial, both defendants moved for severance and the motions were denied by the trial court.

There is a strong policy favoring joint trials in the interest of justice, judicial economy, and administration. Defendants do not have an absolute right to separate trials. *People v Meyers (On Remand),* 124 Mich App 148, 156; 335 NW2d 189 (1983); *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976). Severance is necessary, however, where the defenses are antagonistic; that is, where each of two codefendants claims himself to be innocent by reason of the fact that the other is the guilty party and the joint trial permits the prosecutor to pit one defendant against the other. *People v Hurst,* 396 Mich 1, 6; 238 NW2d 6 (1976).

The decision to hold a joint trial is within the trial court's discretion. MCL 768.5; MSA 28.1028. This Court will not reverse a trial court's decision concerning joint trials unless there has been an abuse of discretion. *People v Miller,* 88 Mich App 210, 222; 276 NW2d 558 (1979), *rev'd on other grounds* 411 Mich 321; 307 NW2d 335 (1981). There must be an affirmative showing of prejudice to substantial rights of the accused before an abuse of discretion will be found. *People v Duby,* 120 Mich App 241, 250; 327 NW2d 455 (1982); *Carroll, supra,* p 414; *People v Schram,* 378 Mich 145; 142 NW2d 662 (1966). When moving for severance, the defendant must clearly, affirmatively, and fully show that his substantial rights will be prejudiced by joint trial, and a conclusory statement of antagonistic defenses must be supported by an affidavit defining the inconsistencies be-

tween the defenses. *People v Gibbs,* 120 Mich App 485, 489; 328 NW2d 65 (1982); *People v American Medical Centers of Michigan, Ltd,* 118 Mich App 135, 145; 324 NW2d 782 (1982), *lv den* 417 Mich 985 (1983); *People v Kramer,* 108 Mich App 240, 256; 310 NW2d 347 (1981).

The instant case does not present the situation found in *Hurst, supra,* where each defendant in attempting to exculpate himself implicated his codefendant. See *People v Walter Moore,* 78 Mich App 294, 299; 259 NW2d 351 (1977). The record discloses that the defenses were different but were not inconsistent. At trial William Byrd claimed that he did not have sexual intercourse with complainant. Complainant testified that although defendant and two others had sexual intercourse with her, William Byrd did not. Defendant's theory of the case, which was submitted to the jury, was that complainant consented to having sexual relations with defendant and that he at no time employed force or coercion.

Statements made by each defendant were admitted at trial. Defendant argues that the admission of William's out-of-court statements, with several references to defendant left intact, was prejudicial in that it bolstered the prosecution's case on a critical and material issue—whether sexual penetration or contact had occurred. In his appellate brief, defendant highlights an excerpt from William Byrd's statement to the police in which William stated that all the men had sex with complainant.[1]

Defendant's argument is not persuasive. As we have previously noted, defendant never denied

---

[1] Immediately after this statement was read, the trial court gave a cautionary instruction to the jury.

having sexual intercourse with complainant.[2] The thrust of defendant's theory was that complainant originally consented to having intercourse, but then got mad and decided to "cry wolf". William Byrd's statement was consistent in all relevant respects with both the defendant's theory of the case and the statement that defendant made to the police. Finally, we note that William Byrd testified at trial and defendant's counsel had the opportunity to cross-examine him. Compare *Duby, supra,* pp 252-253.

Defendant further maintains that, since the trial court found sufficient potential for antagonism between the positions of the two defendants to justify separate representation, its conclusion that separate trials were not needed raised an inconsistency. This contention is specious. This Court has previously observed that the potential for prejudice is greater in the joint representation of codefendants than in the joint trial of codefendants, each represented by separate counsel. *People v Aguilar,* 105 Mich App 258; 306 NW2d 472 (1981). We conclude that the trial court did not abuse its discretion in denying defendant's motion for a separate trial.

Defendant asserts that his convictions should be reversed because several witnesses testified that complainant told them she had been raped. This testimony was improper hearsay, defendant claims, and prejudicially bolstered complainant's credibility. We agree with defendant that at least some of these statements were hearsay not subject

___

[2] In his closing argument, defendant's counsel stated:

"Sharmon Byrd never denied that he did not *[sic]* have sexual intercourse with [complainant]. He's always maintained that. His position is that he did not use force and coercion and that she consented to it on the facts and circumstances of this case. And I'll get into that."

to any exception, including that relating to excited utterances. MRE 803(2); *People v Gee*, 406 Mich 279, 282; 278 NW2d 304 (1979). However, we are convinced that admission of the testimony was harmless for several reasons. Initially, the evidence was cumulative in that complainant had already testified and had indicated that she was subjected to acts of sexual intercourse against her will. *People v Roberson*, 90 Mich App 196, 203; 282 NW2d 280, *lv den* 407 Mich 908 (1979). Independently, other evidence against defendant was strong. *Petrella, supra,* 124 Mich App 760. Finally, we again observe that according to defendant's theory complainant, after consenting to intercouse, became treacherous and falsely accused defendant of rape. Testimony that complainant complained of having been raped did not erode this theory.

Defendant also objects to the testimony of Dr. Hollerman, who testified that he took an oral history from complainant and examined her. Hollerman described her physical and emotional condition to the jury and testified that complainant's physical condition was consistent with that of a recent assault; that is, she had fresh blunt force bruises and lacerations all over her body and bleeding in the vaginal area. Defendant argues that the impact of Hollerman's testimony was to place the medical and scientific stamp of approval on complainant's claim that the sexual acts were committed against her will.

The examining physician in a criminal sexual conduct case is a proper witness as long as his testimony may assist the jurors in their determination of the existence of certain elements of the offense charged. *People v McGillen #2,* 392 Mich 278, 284; 220 NW2d 689 (1974). However, the doctor may not testify that the complainant was raped by

the defendant on the alleged date, *McGillen #2,* p 285, nor may he render an opinion as to the complainant's veracity, *People v Izzo,* 90 Mich App 727; 282 NW2d 10, *lv den* 407 Mich 935 (1979).

These rules were not offended here. Hollerman merely testified that in his expert opinion, on the basis of complainant's emotional state and because of the nature of her physical injuries, complainant had experienced a fairly significant assault. This was not error. *People v Gerald Wells,* 102 Mich App 558; 302 NW2d 232 (1980), *lv den* 417 Mich 916 (1983). See also *People v Stull,* 127 Mich App 14, 19; 338 NW2d 403 (1983).

Finally, defendant claims that the prosecutor's misstatement of the evidence during closing argument requires reversal of his convictions. Defense counsel failed to object to the prosecutor's misstatement, hence appellate review is precluded absent a miscarriage of justice. *People v Etchison,* 123 Mich App 448, 451; 333 NW2d 309, *lv den* 417 Mich 1100.14 (1983); *People v LaPorte,* 103 Mich App 444, 451; 303 NW2d 222 (1981).

During closing argument the prosecutor erroneously stated that Hollerman had testified that the reason there were lacerations to complainant's outer genitalia was because the vagina was not lubricated. A review of Hollerman's testimony reveals that Hollerman did not make the statement attributed to him by the prosecutor. An attorney may not argue or refer to facts not of record. *People v Knolton,* 86 Mich App 424, 428; 272 NW2d 669 (1978), *lv den* 406 Mich 885 (1979); *People v McCain,* 84 Mich App 210; 269 NW2d 528, *lv den* 404 Mich 813 (1978). Defendant does not allege, however, that the prosecutor acted in bad faith. Misstatements should not be held to be prejudicial if they are made in good faith and,

when fairly construed, they do not appear to have been such as would influence the jury adversely to the rights of the accused. *LaPorte, supra,* p 451. This is such a case. Further, had defendant made timely objection, any prejudicial effect could have been eliminated by a curative instruction. *LaPorte, supra; People v Walker,* 93 Mich App 189; 285 NW2d 812 (1979).

Affirmed.