PEOPLE v FOREMAN

PEOPLE v KIRKPATRICK

Docket Nos. 86960, 86999, 88783. Submitted November 13, 1986, at Lansing. Decided June 16, 1987. Leave to appeal applied for.

Jon Foreman was convicted of four counts of first-degree criminal sexual conduct and three counts of second-degree criminal sexual conduct following a jury trial in Lenawee Circuit Court and was sentenced, John C. Timms, J. Wendy K. Kirkpatrick was convicted of three counts of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct following a jury trial in Lenawee Circuit Court and was sentenced, John C. Timms, J. The incidents which gave rise to their convictions arose out of the same events involving defendant Foreman's two children, who were five and six years old at the time of the offenses. Defendant Foreman filed two appeals from his convictions and sentences and defendant Kirkpatrick filed one appeal from her convictions and sentences. The appeals have been consolidated.

The Court of Appeals *held:*

1. The trial court did not err in admitting, as excited utterances, hearsay statements of the children through the testimony of their mother and aunt. There was sufficient foundation for admission of the hearsay evidence in both cases under the excited utterance exception.

2. The trial court did not err in permitting a DSS caseworker

REFERENCES

Am Jur 2d, Evidence §§ 493-497, 708 *et seq.*

Am Jur 2d, Trial §§ 296-299, 305, 306.

Propriety and prejudicial effect of comments by counsel vouching for credibility of witness—state cases. 45 ALR4th 602.

Necessity, in criminal prosecution, of independent evidence of principal act to allow admission, under res gestae or excited utterance exception to hearsay rule, of statement made at time of, or subsequent to, principal act. 38 ALR4th 1237.

Time element as affecting admissibility of statement or complaint made by victim of sex crime as res gestae, spontaneous exclamation, or excited utterance. 89 ALR3d 102.

Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.

to testify that the children's behavior in not promptly reporting the sexual activity was consistent with the behavior of young sexual abuse victims.

3. Remarks made by the prosecuting attorney in his closing arguments in the two cases were not so improper as to warrant reversal even if defendants had objected to the remarks at the time the remarks were made. No manifest injustice resulted from the making of the remarks and defendants were not denied fair trials by the making of the remarks.

4. Any error involved in the admission of testimony in Kirkpatrick's trial concerning her prior sexual conduct with defendant Foreman was harmless beyond a reasonable doubt.

5. The fact that identical sentences were imposed on the defendants does not mean that the trial judge abused his discretion by not individualizing the sentences by tailoring them to meet the circumstances of the cases and the defendants. The sentences were sufficiently individualized.

Affirmed.

1. CRIMINAL LAW — SEXUAL ABUSE — EVIDENCE — HEARSAY — EXCITED UTTERANCE.

A young victim's out-of-court statements concerning sexual abuse may be admitted to corroborate his testimony at trial under the excited utterance exception to the hearsay rule if the proper foundation is established.

2. EVIDENCE — HEARSAY — EXCITED UTTERANCE — COURT RULES.

Three criteria must be met before a statement can be admitted into evidence under the excited utterance exception to the hearsay rule: (1) the statement must arise out of a startling event; (2) it must be made before there has been time for contrivance or misrepresentation; and (3) it must relate to the circumstances of the startling event (MCR 803[2]).

3. EVIDENCE — HEARSAY — EXCITED UTTERANCE.

There is no set length of time within which statements must be made following a startling event to be admissible into evidence under the excited utterance exception to the hearsay rule; the significance of the length of time between the startling event and the statement depends largely on the nature of the event and the emotional state of the declarant.

4. PROSECUTING ATTORNEYS — CLOSING ARGUMENTS — APPEAL — PRESERVING QUESTION.

Appellate review of a prosecuting attorney's closing remarks is foreclosed where no objection to the remarks was made at trial

unless the prejudicial effect was so great that it could not have been cured by an appropriate instruction and failure to consider the issue would result in a miscarriage of justice.

5. TRIAL — PROSECUTORIAL COMMENT.
   A prosecutor is not prohibited from making fair comments on the evidence, including arguing the credibility of the witnesses, when there is conflicting evidence and the question of a defendant's guilt or innocence turns on which witness is believed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Nathan T. Fairchild,* Prosecuting Attorney, and *Thomas C. Johnson,* Assistant Attorney General, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for Jon Foreman.

*Patricia S. Slomski,* for Wendy Kay Kirkpatrick.

Before: R. B. BURNS, P.J., and GRIBBS and A. T. DAVIS,* JJ.

GRIBBS, J. This is a consolidated appeal from the convictions and sentences of defendants, Jon Foreman and Wendy Kay Kirkpatrick. While the defendants had separate trials, the incidents which gave rise to their convictions arose out of the same events. As a result, most of the testimony at both trials was the same. In their appeals as of right, defendants raise three common issues and defendant Kirkpatrick raises two separate issues.

On May 23, 1985, defendant Jon Foreman was convicted by a jury of four counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and three counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a); MSA 28.788(3)(1)(a). Foreman was sentenced to concurrent prison terms of twenty to forty years for each

* Circuit judge, sitting on the Court of Appeals by assignment.

CSC I count, and ten to fifteen years for each CSC II count. Foreman appeals as of right. We affirm.

On August 1, 1985, defendant Wendy Kay Kirkpatrick was convicted by a jury of three counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and two counts of second-degree criminal sexual conduct, MCL 750.520c; MSA 28.788(3). Kirkpatrick was sentenced to concurrent prison terms of twenty to forty years for each CSC I conviction and ten to fifteen years for each CSC II conviction. Kirkpatrick appeals as of right. We affirm.

The incidents which gave rise to the charges against defendants occurred during the spring and summer of 1984. The victims of the criminal sexual conduct, a boy, age six, and a girl, age five, are the children of defendant Jon Foreman, with whom defendant Kirkpatrick was living during that period. Melinda Foreman, the children's mother, testified that her marriage to defendant began to break up in late 1983 or early 1984, when she learned that Foreman and Kirkpatrick, who is Mrs. Foreman's niece, were having an affair. Divorce proceedings were initiated, and Mrs. Foreman was granted temporary custody with Foreman having visitation every other weekend. In May, 1984, when the visitation order was entered, defendants were living together in an apartment. Foreman did not want the children the whole weekend but would pick them up on Saturday mornings and return them Saturday evenings. Foreman had one visitation in May, and two in June and July, 1984. In August, defendant Foreman's truck broke down and he did not come for the children again until the end of August or beginning of September, 1984. At that time, the girl refused to go with defendant, but the boy went on that visit. Mrs. Foreman did not allow any

visitation after that visit. According to the children, defendant Kirkpatrick was present during all the visitations.

Mrs. Foreman testified that, after the visitations began, the children's behavior changed. They became argumentative, nervous and frightened. As visitation days would approach, they would begin to cry and say that they did not want to visit their father. They also began to cry in their sleep and have nightmares. Both children, although toilet trained, began wetting their pants and wetting their beds. Marilyn Anderson, Melinda Foreman's sister, who saw the children frequently during July, August and September of 1984, also testified as to the changes she noticed in the children's behavior.

The testimony of the boy, age seven at the time of trial, showed numerous instances of sexual abuse. On a number of occasions, with Jon Foreman present, he was forced to perform oral sex on Wendy Kirkpatrick. He was made to suck her vagina, rectum, and breasts. He was also forced to perform oral sex on his father, as well as Tammy Kirkpatrick, Wendy's sister. On one occasion, Foreman stuck a wire up the boy's rectum.

The boy, using anatomically correct dolls, testified that he was forced to perform sexual intercourse as well as sodomy with Wendy Kirkpatrick. He was also forced to have anal intercourse with his sister. Wendy would also put her fingers in his rectum. The boy testified that he was repeatedly threatened with harm by both defendants if he did not want to perform these sexual acts or if he told anyone what they were doing. He said that Foreman threatened to kill his mother and aunt as well as him if he told anyone.

The girl, age six at the time of trial, also testified. She, using anatomically correct dolls, testified

as to the sexual abuse inflicted upon her. She testified that Jon Foreman attempted to penetrate her rectum with his penis. Foreman repeatedly threatened to murder her if she told anyone. She was also forced to perform several sexual acts with defendant Kirkpatrick and have anal intercourse with her brother. Kirkpatrick also put her fingers in the girl's vagina and rectum. She further testified that she observed her brother engage in sexual acts with Wendy and Jon Foreman. She testified that Jon Foreman put a wire in her vagina and rectum. Additional facts will be presented where relevant.

The first issue raised by each defendant is identical. They argue that the trial court erred in admitting, as excited utterances, the hearsay statements of the children through the testimony of Marilyn Anderson and Melinda Foreman.

One day in September, 1984, Marilyn Anderson, Melinda Foreman's sister, was baby-sitting the girl while her brother was at school. Over defendants' objection in each trial, the trial court allowed Anderson to testify as to the statements made by the children.

When Anderson awakened the girl for breakfast at about 9:30 A.M. or 10:00 A.M., she was crying and when she came into the kitchen she was still crying. Later, according to Anderson, the girl, without prompting, told her about the sexual incidents that had happened at Jon Foreman's apartment. Anderson testified as to what was said by the girl.

That evening, the boy, after having learned that his sister had been talking about the events in question, told his mother about the activities that had been going on at his father's apartment, and Melinda Foreman related these statements before

the jury in each trial over defense counsels' objections.

Defendants assert that the testimony of Anderson and Foreman relating out-of-court statements of the children was erroneous, citing *People v Kreiner,* 415 Mich 372; 329 NW2d 716 (1982). In *Kreiner,* our Supreme Court held that the "tender years" exception to the hearsay rule, which allowed a young victim's out-of-court statements to be admitted to corroborate testimony at trial, did not survive the adoption of the Michigan Rules of Evidence. *Id.* at 377. Such statements, however, might be admissible under the excited utterance exception if the proper foundation is established. *Id.* at 379.

The Supreme Court, in *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979), set forth three criteria which must be met before a statement can be admitted into evidence as an excited utterance under MCR 803(2): (1) the statement must arise out of a startling event; (2) it must be made before there has been time for contrivance or misrepresentation; and (3) it must relate to the circumstances of the startling event.

Defendants contend that the trial court impermissibly relaxed *Gee's* foundational requirements because of the children's young ages, contrary to *Kreiner, supra. Kreiner,* however, does not require that the age of a declarant be ignored when determining whether a statement qualifies as an "excited utterance." Rather, it requires that the three *Gee* criteria be applied whenever that determination is being made. The criterion most commonly at issue in cases involving MRE 803(2), and the only criterion we find at issue here, is the second one, which requires that the statement be made before enough time has passed for contrivance or misrepresentation. In analyzing whether a declar-

ant had time to or may have contrived the "spontaneous" statement, the age and mental abilities of the declarant, as well as the startling event, are natural considerations. For some declarants, the passage of one minute between a startling event and a related statement may be enough to disqualify the statement as an "excited utterance." For other declarants, such as those of young age or with mental deficiencies, the passage of days or weeks may not negate the spontaneity of a statement. A distinction must be made between admission of hearsay merely because of the tender age of the declarant, which would be error, and admission based on circumstances showing a low probability that the hearsay statement was contrived or misrepresented. In both cases, the trial court found the children, because of their young ages and because of the nature of the events alleged in their statements, had little ability to fabricate.

Specifically, in defendant Kirkpatrick's case, the trial court ruled:

> The whole purpose of this exception . . . is to prevent persons from making up stories after an event has occurred. That's one of the reasons that time is essential in determining whether it's an excited utterance. But it's extremely hard for this Court to believe that children of five and six years old could make up stories involving sexually explicit events without those things['] happening. It's just very difficult for me to believe that.

The trial judge ruled similarly in defendant Foreman's case, noting that the abuse was continuing, that the childrens' demeanor had changed, that the statements were spontaneous and that the children would have had great difficulty in fabricating these stories. Thus, the statements were trustworthy.

There is no set length of time within which statements must be made following a startling event. The length of time between the startling event and the statement is a significant factor, but its significance depends largely on the nature of the event. *People v Zysk,* 149 Mich App 452, 457; 386 NW2d 213 (1986). In *People v Soles,* 143 Mich App 433; 372 NW2d 588, lv den 424 Mich 863 (1985), five days passed before a social worker and a detective gained the trust of the six-year-old victim and obtained a description of the assault. In approving the trial court's admission of the child's hearsay statements, the Court wrote:

> Generally, a time lapse of five days between the event and the statement would provide more than a sufficient opportunity to contrive and misrepresent an incident, and thus a statement given under such circumstances would clearly be inadmissible. However, where such a heinous assault is committed upon a child so young, it is not beyond reason to suggest that she could remain so traumatized by the incident as to be incapable of contriving or misrepresenting the crimes committed to her person for a period of five days or longer. [*Id.* at 438.]

In *People v Draper,* 150 Mich App 481; 389 NW2d 89 (1986), statements made by the three-year-old victim one week after the incident were admitted. This Court again found no error, noting that the statements were not responses to questions but were made spontaneously during a physical examination and that the event was sufficiently startling that the excitement it caused could have lasted a week. *Id.* at 486. The emotional state of the victim should also be taken into account when determining whether there was time for contrivance. *Zysk, supra* at 457.

We believe there was sufficient foundation for admission of the hearsay evidence in both cases under the "excited utterance" exception. Although the delay of approximately one month between the last visitation and the day when the statements were made is longer than the delays in any of the cases cited, this case, unlike the cited cases, involves sexual abuse that was ongoing for a period of three to four months. The testimony of Melinda Foreman and Marilyn Anderson that the children became agitated and nervous in behavior over this period and began wetting their pants strongly suggests that the children were in a continuous state of excitement, even trauma, and were in that state when the statements were made. The delay in telling anyone about their experiences with their father and Kirkpatrick was apparently due to the threats to harm them if they did not go along with the activities or told anyone about the activities. The sexual explicitness of the events described by the children was quite beyond the experiences of children of such young ages. Finally, the testimony at trial indicated that the statements were made spontaneously, not in response to Ms. Foreman's or Ms. Anderson's questions, and that the children were upset and excited when they made the statements. Under these conditions, it is extremely doubtful that the children's statements were fabricated. We find no error.

Each defendant also raises an identical second issue. They assert that the testimony of Children's Protective Services caseworker Brenda Woolard, that the children's behavior was consistent with the behavior of young sexual abuse victims, was erroneously admitted. Woolard, after inquiry into her training and experience in the area of child abuse, testified that it was not unusual, but very

common, for children to endure weeks or months of abuse before reporting it. Citing *People v Pullins,* 145 Mich App 414; 378 NW2d 502 (1985), defendants argue that Woolard's testimony constituted improper and inadmissible testimony of rape trauma syndrome. In *Pullins,* the testimony was found inadmissible because it was offered to prove that a rape in fact occurred. Defendants' reliance on *Pullins,* however, is misplaced. Woolard's testimony was not offered to prove that the sexual abuse occurred. Instead, the testimony was presented to explain that, if any sexual abuse occurred, it would not be uncommon for the children to fail to promptly report it. This was an entirely proper purpose. See *People v Stull,* 127 Mich App 14, 19; 338 NW2d 403 (1983), lv den 422 Mich 939 (1985).

Defendants have also argued that Woolard's testimony invaded the fact-finding process of the jury, contrary to *People v McGillen #2,* 392 Mich 278; 220 NW2d 689 (1974), and *People v Izzo,* 90 Mich App 727; 282 NW2d 10 (1979), lv den 407 Mich 935 (1979). Both cases are inapplicable because nowhere in Woolard's testimony did she render an opinion as to whether the children had been sexually assaulted or opine as to whether the children were being truthful in their accounts of sexual abuse. See *People v Skinner,* 153 Mich App 815, 820-821; 396 NW2d 548 (1986); Cf. *People v Smith,* 425 Mich 98; 387 NW2d 814 (1986). The trial court did not err in allowing the testimony of Brenda Woolard.

Defendants' third common issue is that error requiring reversal occurred because of improper remarks made by the prosecutor during closing argument. Both defendants argue that the prosecutor improperly vouched for the credibility of the Department of Social Services and the police and

improperly argued that the jury should believe those agencies because they would not have pushed forward with the case if they did not believe the stories of the children. Defendant Kirkpatrick also argues that the prosecutor improperly vouched for the credibility of the children.

Neither defendant, however, made any objection at trial to the prosecutor's closing argument. Thus, appellate review of the prosecutor's closing remarks is foreclosed unless the prejudicial effect was so great it could not have been cured by an appropriate instruction and our failure to consider the issue would result in a miscarriage of justice. *People v Duncan,* 402 Mich 1, 15-16; 360 NW2d 841 (1977); *People v Federico,* 146 Mich App 776, 794; 381 NW2d 819 (1985), lv den 425 Mich 867 (1986). Not only could an appropriate instruction have obviated any possible prejudice now raised by defendants on appeal, but our refusal to review the remarks will not result in a miscarriage of justice.

Looking at the remarks as a whole, not in isolation, and evaluating them in light of the evidence presented at trial, we do not believe they are so improper as to warrant reversal even had an objection been made. A prosecutor is not prohibited from making fair comments on the evidence, including arguing the credibility of the witnesses when there is conflicting evidence and the question of a defendant's guilt or innocence turns on which witness is believed. *People v Flanagan,* 129 Mich App 786, 795-796; 342 NW2d 609 (1983). We find no manifest injustice and believe that defendants were not denied fair trials.

Defendant Kirkpatrick also asserts as error the admission in her trial of testimony of her prior sexual conduct with defendant Foreman. At trial, Melinda Foreman testified that, one evening after

she and defendant Jon Foreman had gone to bed, she was awakened by defendant Kirkpatrick stroking her husband's penis at the foot of the bed. This is the incident which led Melinda Foreman to file for divorce. Subsequently, defendants began living together and were living together while the children were visiting with their father.

Defendant Kirkpatrick argues that this testimony, as well as the testimony that Kirkpatrick had moved in with the Foremans because her parents had kicked her out of their house and that Melinda struggled mentally and financially to cope after her husband and Kirkpatrick started their relationship, was clearly irrelevant and collateral to the charges at issue. Kirkpatrick argues that the effect of this testimony was to portray her as a "bad person" and preclude an objective determination of her guilt or innocence of the crimes charged. We disagree.

While we find the evidence to be marginally relevant, we do not find its admission constitutes grounds for reversal. The evidence tended to show the nature of Jon Foreman's relationship with his eighteen-year-old niece and how they came to live together. It also served to corroborate the boy's testimony that he witnessed (in fact, he was forced to watch) defendants engaged in sexual relations. Given that the testimony at trial included considerable explicit detail of the sexual abuse perpetrated, we do not see how this testimony could have unduly prejudiced defendant Kirkpatrick. It was briefly presented and no specific reference was made to it in the prosecutor's closing argument. Thus, even if admission of the testimony could be deemed error, any error was harmless beyond a reasonable doubt. *People v Robinson*, 386 Mich 551, 563; 194 NW2d 709 (1972); *People v Green*, 131 Mich App 232, 237; 345 NW2d 676 (1983).

Defendant Kirkpatrick's remaining issue concerns her sentence. Kirkpatrick argues that the trial judge abused his sentencing discretion when he imposed the same sentences on her as on defendant Foreman. Specifically, Kirkpatrick argues that by imposing the same sentences the trial judge failed to individualize her sentence by tailoring it to meet the circumstances of the case and the defendant. *People v Coles,* 417 Mich 523, 537; 339 NW2d 440 (1983).

We find that Kirkpatrick's sentence was sufficiently individualized. It was not improper for the trial judge to mention the sentence he gave Jon Foreman as their convictions arose out of the same events. The trial court noted that these were serious sexual crimes Kirkpatrick was convicted of and that the crimes involved two very young children. The trial court further noted that the children were now in therapy and that their lives will be forever changed by the activities of this defendant and others. We find no abuse of discretion in the trial judge's sentencing of Kirkpatrick.

The convictions and sentences of defendants Jon Foreman and Wendy Kay Kirkpatrick are affirmed.

Affirmed.