PEOPLE v HAMILTON

Docket No. 94057. Submitted April 14, 1987, at Lansing. Decided
August 21, 1987.

Thomas A. Hamilton was charged with felony murder, assault
with intent to commit armed robbery and possession of a
firearm in the commission of a felony, Jackson Circuit Court.
At trial the court found that statements made to the police
were voluntary and admissible. The defense sought to introduce
testimony of a clinical psychologist to explain the psychological
reasons and factors motivating defendant to make the state-
ments, it being defendant's defense that he did not commit the
crimes. The prosecutor objected on the ground that defendant
had not filed a notice of an insanity defense. The court did not
allow the testimony. The trial ended in a hung jury. The court
declared a mistrial. Defendant moved to allow the testimony at
retrial. The court, James L. Fleming, J., denied the motion.
Defendant appealed by leave granted.

The Court of Appeals *held:*

The court abused its discretion in excluding the testimony;
such psychiatric testimony is admissible since it relates to the
weight and credibility of defendant's statements.

Reversed and remanded.

CRIMINAL LAW — PSYCHIATRIC TESTIMONY — EVIDENCE — EXPERT
WITNESSES.

Where statements made by a criminal defendant are admitted to
show guilt, psychiatric testimony of a qualified expert relating
to the weight and credibility of the statements is admissible.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Joseph S. Filip,* Prose-

REFERENCES
Am Jur 2d, Expert and Opinion Evidence §§ 85 *et seq.*; 184, 186.
Necessity and admissibility of expert testimony as to credibility of
witness. 20 ALR3d 684.
Validity and construction of statutes providing for psychiatric
examination of accused to determine mental condition. 32 ALR2d
434.

cuting Attorney, and *Jerrold Schrotenboer,* Assistant Prosecuting Attorney, for the people.

*Paul R. Adams,* for defendant.

Before: CYNAR, P.J., and SHEPHERD and B. A. JASPER,* JJ.

PER CURIAM. This case is before us on leave granted. It concerns an issue in a pending retrial: whether evidence of defendant's psychological makeup is admissible to allow the jury to evaluate the voluntariness of his statements to the police. The trial court excluded the expert testimony on this issue. We reverse and remand.

Defendant has been charged with felony murder, assault with intent to commit armed robbery, and possession of a firearm in the commission of a felony resulting from the April 8, 1979, death of a convenience store proprietor. Defendant was sixteen years old at the time and the probate court waived jurisdiction.

Defendant's alleged involvement came to light when the police interviewed him in May, 1984, on an unrelated stolen automobile charge. At that time, defendant told the investigating officer "about a breaking and entering and some armed robberies he wanted to clear up." Defendant eventually made several conflicting statements concerning the April 8, 1979, robbery-murder, including confessing to the shooting. The trial court held a *Walker*[1] hearing on July 19, 1984. The court found defendant's statements to be voluntary and admissible.

Trial began on April 28, 1986. The prosecutor

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

introduced defendant's statements into evidence. No transcript of that portion of the trial has been provided to us. Defense counsel, however, sought to offer the testimony of Dr. Michael Abramsky, a clinical psychologist who interviewed defendant approximately one month after his arrest, to explain "to the jury the psychological reasons and factors which would motivate such statements, i.e., to explain the evidence presented by the prosecution, as permitted by MRE 702."

The prosecutor objected on the ground that the defendant had filed no notice of an insanity defense. Defense counsel insisted that Dr. Abramsky's testimony related only to defendant's psychological makeup and how it related to any statements he made to the police. Defendant insists on appeal that Dr. Abramsky's testimony in no way relates to any insanity defense. It appears, however, that the prosecutor and trial court may have been confused on this point. Defendant's defense is apparently that he did not commit the crime despite the fact that he later confessed to it. Defendant argues that he offered Dr. Abramsky's testimony to allow the jury to evaluate the weight and credibility of defendant's statements and to explain why defendant may have made them.

Defendant made a special record in the jury's absence. Dr. Abramsky testified as to how defendant's psychological makeup might have affected his statements to the police. He indicated that defendant's Rorschach test profile was similar to that of a fifteen-year old, although defendant was twenty-two years old at the time. It revealed "some very gross immaturities, very rich fantasy life." Defendant was a grossly immature person who played fantasy games with toy soldiers, involving characters like James Cagney, Humphrey Bogart, and Errol Flynn, and had "a very romanti-

cized point of view of the world." Defendant also romanticized the idea of a prison sentence and prison life. Dr. Abramsky described defendant's conception of prison as a "grade B movie fantasy." Dr. Abramsky found defendant's various versions of his confession consistent with defendant's "personality organization." Defendant changed his stories often when talking to Dr. Abramsky, even concerning trivial things, saying he lied and made up stories to impress the psychiatrist. Dr. Abramsky concluded that much of defendant's confession was a cover up for the fact that he had given his fifteen-year-old girlfriend a stereo and did not want her to discover that it was stolen and that his stories were a "sham." Defendant did not want the police to recover the stereo from her, thus tarnishing his image.

Dr. Abramsky summarized the conclusions he intended to present to the jury:

> Well, that he was operating psychologically at the level of a 15 year old at the time that I saw. That his judgment was extremely poor. He did not appreciate certain consequences. That he had a strong need to impress people and to say what people wanted to hear. And that in general his approach was fantasy approach, where, although he could understand the difference between fantasy and reality, unless you really watched him very closely he said a lot of things that made him look very good but in fact had very little relationship to the truth.

Dr. Abramsky also noted the defendant had a tendency to say bad things about himself as a punishment.

Dr. Abramsky had not testified at the *Walker* hearing, but the trial court concluded that his testimony should have been presented then. In

excluding Dr. Abramsky's testimony at trial, the court characterized this testimony as "nothing more than an end run around" the court's determination of voluntariness at the *Walker* hearing. The court noted that the issue of voluntariness was not for the jury to decide. The court also apparently concluded that the testimony related to a "diminished capacity type of defense" and was offered without proper notice.

Defendant's first trial ended in a hung jury and a mistrial. Defendant moved on June 20, 1986, to admit Dr. Abramsky's testimony at retrial. Defendant filed a "notice of intent to call expert witness" at that time, noting again that no insanity defense was actually involved. The court denied defendant's motion on July 14, 1986.

We conclude that the trial court erred in excluding Dr. Abramsky's testimony. Even though defendant's statements were voluntary and no insanity defense is raised, such psychiatric testimony is admissible as it relates to the weight and credibility of defendant's statements.

What defendant seeks to do was described by this Court in *People v Gilbert,* 55 Mich App 168, 172-173; 222 NW2d 305 (1974):

> The purpose of the suppression hearing was to determine the admissibility of defendant's confession as evidence. A resolution in favor of admissibility merely placed the confession on an equal footing with all other properly admitted evidence. Defendant is as free as he was before the *Walker* hearing to familiarize the jury with the circumstances that attended the taking of his confession, including facts bearing on voluntariness, to impeach its credibility or to challenge the fact that it was ever given at all. *Lego v Twomey,* 404 US 477, 485-486; 92 S Ct 619, 625; 30 L Ed 2d 618, 625 (1971). After such evidence has been admitted, the

trial judge may instruct the jury that they should determine, on the basis of all the relevant evidence, 1) if the confession was made, and 2) if they so find, they should decide if the statement is true. *People v Williams,* 46 Mich App 165; 207 NW2d 480 (1973).

More recently, the United States Supreme Court held in *Crane v Kentucky,* 476 US —; 106 S Ct 2142; 90 L Ed 2d 636, 644-645 (1986), that evidence of the manner in which a confession was obtained may be highly relevant to the confession's reliability and credibility, and should be admitted regardless of the result of earlier suppression motions and independent of any question of voluntariness. Questions of credibility are for the jury, and a defendant has a right to challenge a confession's reliability at trial. 90 L Ed 2d 643. The Court noted that even voluntary confessions are not conclusive of guilt and that "the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence." The Court further noted, 90 L Ed 2d 644:

> Indeed, stripped of the power to describe to the jury the *circumstances that prompted his* confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt?

*Crane* did not concern evidence of the defendant's psychological makeup, but focused instead on the physical and psychological aspects of an interrogation. Nonetheless, we believe the United States Supreme Court's reasoning is equally applicable to otherwise admissible expert testimony.

See also *United States v Smith,* 638 F2d 131, 133-134 (CA 9, 1981).

Admission of expert testimony is governed by MRE 702:

> If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The critical inquiry is whether such testimony will aid the factfinder in making the ultimate decision in the case. *People v Smith,* 425 Mich 98, 105; 387 NW2d 814 (1986). Dr. Abramsky's testimony meets this test as it would help the jury understand the circumstances surrounding defendant's statements to the police and how those circumstances affected the reliability and credibility of defendant's statements. Such an understanding is central to the jury's determination of defendant's guilt or innocence.

In *People v Draper,* 150 Mich App 481, 487-488; 389 NW2d 89 (1986), this Court permitted expert psychological testimony concerning the "indicators of a sexually abused child." Similarly, in *People v Skinner,* 153 Mich App 815, 822-823; 396 NW2d 548 (1986), another panel of this Court permitted expert psychological testimony concerning "rape trauma syndrome" and the "profile of sexually-abused children." Most recently, in *People v Foreman,* 161 Mich App 14; 410 NW2d 289 (1987), expert testimony concerning the behavior of young sexual abuse victims was properly admitted to explain that, if any sexual abuse occurred, it would not be uncommon for the children to fail to report it promptly. A different situation existed in

*People v Matlock,* 153 Mich App 171, 178; 395 NW2d 274 (1986), where similar testimony was effectively used along with other testimony and opinion by the same expert to vouch for the young complainant's credibility by giving it "an impermissible stamp of scientific legitimacy."

The evidence in *Draper, Skinner,* and *Foreman* is somewhat different from that offered in this case. The cases, however, support the use of expert psychological testimony to help the jury evaluate other evidence. See also *State v Kim,* 64 Hawaii 598, 607; 645 P2d 1330 (1982). Moreover, *Foreman* also involved the use of such testimony to explain a person's reaction to a situation, in that case a child's failure to report sexual abuse promptly.

The determination of when such testimony is admissible lies within the trial court's discretion and will vary according to the area at issue and the particular facts of the case. The party proffering the expert's testimony must persuade the trial court that the expert possesses specialized knowledge which will aid the jury in understanding the evidence or determining a fact in issue. *People v Smith, supra,* pp 106, 112. Under the facts of this case, we believe the trial court did not exercise its discretion when it excluded expert testimony which would have aided the jury in evaluating the credibility and reliability of defendant's statements to the police. The trial court may not have done so in the belief that it did not have discretion since the defense of insanity was not raised. For the reasons stated herein, we find that it is within the sound discretion of the trial court to admit such evidence. We further find that it would be an abuse of discretion in this case not to admit it if limitations similar to those stated below are imposed.

We agree with the prosecutor that defendant

should not be allowed to use Dr. Abramsky as a sort of "human lie detector." See *Matlock, supra; People v Byrd,* 133 Mich App 767, 780; 350 NW2d 802 (1984); *People v Gerald Wells,* 102 Mich App 558, 562; 302 NW2d 232 (1980). Dr. Abramsky should not be permitted to give an opinion as to whether defendant was telling the truth when he made the statements to the police. We do not believe that that is what defendant seeks to present, however. Defendant instead seeks to offer Dr. Abramsky's expert testimony concerning defendant's psychological makeup which the jury may use to assess defendant's credibility along with the other evidence presented. With proper limitations imposed by the trial court under the standards stated herein, the trial court would be required to admit the testimony under these facts.

Reversed and remanded for further proceedings consistent with this opinion.