PEOPLE v CLARK

Docket No. 91263. Submitted June 10, 1987, at Grand Rapids. Decided November 2, 1987.

Albert E. Clark was charged with two counts of criminal sexual conduct in the first degree and, following a jury trial in Kent Circuit Court, George R. Cook, J., was convicted on both counts. The nine-year-old complainant, daughter of defendant's girlfriend, testified that defendant took her to an unspecified wooded area which was less than thirty minutes from her Grand Rapids home, forced her to engage in various sex acts, and then returned her to her home. The complainant's mother was permitted to testify about the description of the offense related to her by the complainant on the morning following the crime. An emergency room doctor testified that he observed a whitish-yellow secretion on the external genitalia of the complainant but that, when he had examined a secretion sample at that time, he had not observed any motile sperm. The doctor then testified, over a defense objection, that he had reexamined the rape kit slides on the morning of his testimony and had, on this second examination, observed two sperm. While the prose-

REFERENCES

Am Jur 2d, Criminal Law § 362.

Am Jur 2d, Depositions and Discovery § 90.

Am Jur 2d, Evidence § 708.

Necessity, in criminal prosecution, of independent evidence of prinicpal act to allow admission, under res gestae or excited utterance exception to hearsay rule, of statement made at time of, or subsequent to, principal act. 38 ALR4th 1237.

Exclusion of evidence in state criminal action for failure of prosecution to comply with discovery requirements as to statements made by defendants or other nonexpert witnesses—modern cases. 33 ALR4th 301.

Exclusion of evidence in state criminal action for failure of prosecution to comply with discovery requirements as to physical or documentary evidence or the like—modern cases. 27 ALR4th 105.

When is hearsay statement an "excited utterance" admissible under Rule 803(2) of the Federal Rules of Evidence. 48 ALR Fed 451.

Time element as affecting admissibility of statement or complaint made by victim of sex crime as res gestae, spontaneous exclamation, or excited utterance. 89 ALR3d 102.

cutor had a discovery agreement with defense counsel, the prosecutor had not informed defense counsel that the rape kit still existed or of the intent to test the contents of the kit. The trial court, recognizing the breach of the discovery agreement, made the lab technician who initially examined the kit available to defense counsel and allowed defense counsel the opportunity to seek expert medical advice; however, the defense did not avail itself of the opportunity and the trial court held that the introduction of the new evidence had not denied defendant a fair trial. Defendant appealed.

The Court of Appeals *held:*

1. While the failure of the prosecution to notify defense counsel of the intent to run tests on the rape kit materials was a breach of the discovery agreement, the trial court properly exercised its discretion in permitting the admission of the testimony under these circumstances. The court permitted defense counsel adequate time to meet this new evidence. Further, defendant failed to show how the surprise of this new evidence prejudiced his case.

2. The trial court properly allowed complainant's mother to testify as to complainant's description of the events made when she arose on the morning following the crime, since the complainant's statements at that time were clearly excited utterances and thus not subject to the hearsay rule.

3. Since the testimony of complainant was sufficient to create a jury question on whether venue properly lay in Kent County, the trial court properly denied the motion for a directed verdict on the ground of improper venue.

4. The information sufficiently informed the defendant of the nature, time and place of the charged offense.

5. The sentences imposed do not shock the conscience of the Court.

Affirmed.

1. CRIMINAL LAW — DISCOVERY — REMEDIES.

Trial courts have discretion to deal with questions of noncompliance with discovery orders or agreements; in fashioning remedies in the exercise of that discretion, there must be a fair balancing of the interests of the courts, the public, and the parties; the exclusion of otherwise admissible evidence on the basis of nondisclosure is a remedy which should follow only in the most egregious cases.

2. CRIMINAL LAW — SEXUAL ABUSE — EVIDENCE — HEARSAY — EXCITED UTTERANCE.

A young victim's out-of-court statements concerning sexual abuse

may be admitted to corroborate her testimony at trial where it is shown that those statements were excited utterances.

3. CRIMINAL LAW — VENUE — JURY — QUESTION OF FACT.

    It is proper for a trial court to deny a motion for a directed verdict which had been made on the basis that venue in the court had not been established where, from the testimony of the complainant, the jury could have found that the crime had been committed in the county.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*James R. Rinck,* for defendant.

Before: J. B. SULLIVAN, P.J., and G. R. McDONALD and J. M. GRAVES, JR.,* JJ.

J. B. SULLIVAN, P.J. Following a jury trial, defendant was convicted of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a). Sentenced to concurrent prison terms of thirty-five to seventy years, defendant now appeals as of right. We affirm.

The prosecution's evidence at trial established that the victim of the offense was a nine-year-old girl. During the evening of the offense, defendant had been at the Happy Hour Bar with the girl's mother, with whom defendant had resided on a periodic basis. The girl was dropped off at a babysitter's house where she was to stay the evening. Her mother testified that, an hour and a half after they arrived at the bar, defendant left, indicating that he wanted to pick up personal belongings at an old girlfriend's house. The mother later went to another bar, where she stayed until closing.

The victim testified that at approximately 11:00

---

* Circuit judge, sitting on the Court of Appeals by assignment.

P.M. that evening, defendant picked her up from the baby-sitter's house. They drove back to the Happy Hour Bar, where defendant went inside to find the victim's mother. Defendant returned to the car, told the victim her mother was not there and then rubbed her between the legs.

At that point, defendant drove away. When he later stopped to get gas, the victim went to the back seat and fell asleep. She testified that, later, in a wooded area, defendant, now also in the back seat, shook her awake and told her he was going to make her a woman. He threatened her, telling her to cooperate or he would beat her and her mother. Defendant then forced her to take her clothes off, put one of his fingers in her vagina and forced her to have repeated oral and anal sex with him. At some point during this offense, the victim complained to defendant that he had hurt her. Defendant responded by hitting her face with his open hand.

Defendant eventually drove the victim back to her home in Grand Rapids. She was unsure of the time it took to drive from the wooded area to her home, but said it was "probably a few minutes or a half hour."

When they arrived at the victim's home, defendant left after letting her in. She went upstairs and went straight to sleep. In the morning, she woke her mother and a man who apparently slept with her mother that evening and told them about the offense. According to her mother, the victim was crying as she reported the incident. The three of them then went to a restaurant where the mother worked. There, the mother telephoned the Rape Crisis Center and the police.

The victim was later taken to Butterworth Hospital. She was examined at the emergency room by Dr. Bruce Nugent, to whom she reported the of-

fense and appeared to be "very frightened." Dr. Nugent noted a fresh "reddish-blackish" bruise in the area of the victim's left jaw. Although he did not observe any evidence of trauma to the rectum, he indicated that the muscle tone of the anus was looser than he would have expected. This looseness was consistent with a finger or a penis having been put into the child's rectal area. Over the victim's external genitalia, he observed a "whitish-yellow secretion" which appeared to be semen. Dr. Nugent took swabs of the material and also collected other specimens from the rectum and the vagina. He put four of them into a kit. Later, Dr. Nugent examined a sample from a swab he had placed in sterile water under a microscope. He did not observe motile sperm on it.

Over renewed objection by defendant's attorney, Dr. Nugent testified that the morning of his testimony he reexamined the rape kit slides. According to Dr. Nugent, he examined the slide of the whitish-yellow material he had earlier testified about and, at that time, observed two sperm.

It is this last piece of testimony which is the subject of the first issue on appeal. Defendant maintains that the prosecution sought to admit this evidence without first disclosing it to defense counsel, in violation of the parties' discovery agreement. He asserts that, as the rape kit samples were not positively identified as sperm until after the trial had begun, he was prejudiced and denied a fair trial due to unfair surprise.

Until recently, this Court has equated prosecutorial failure to comply with discovery agreements and orders with a constitutional denial of due process and, accordingly, has held that admission of undisclosed evidence, even if not exculpatory, requires reversal unless the failure to divulge was

harmless beyond a reasonable doubt.[1] However, in *People v Taylor,* 159 Mich App 468, 471; 406 NW2d 859 (1987), this Court renounced the "view that this procedural problem should be elevated to constitutional rank and locked into an inflexible remedy." Instead, the *Taylor* Court concluded that questions of noncompliance with discovery orders or agreements and appropriate remedies are subject to the discretion of the trial court, which it must regularly exercise as part of its inherent power to control the admission of evidence so as to promote the interests of justice.

We agree with *Taylor* that denial of discovery of inculpatory evidence subject to an order or agreement does not necessarily constitute a denial of due process and that trial courts have discretion to fashion appropriate remedies for such prosecutorial misconduct. In deciding how a court is to exercise its discretion, we again turn to *Taylor,* which suggests that, to remedy noncompliance with a discovery statute, rule, order or agreement, the court must "determine what legitimate interests of the courts and of the parties are involved and how they may be affected by the remedial choices available." 159 Mich App 484. Thus, the court must commonly consider a criminal defendant's interests in the optimal preparation of his own case and the ability to minimize prosecutorial opportunities to falsify evidence. *Id.,* 485-486. As in *Taylor,* where the undisclosed evidence is unfavorable to the objecting party, it is the latter interest which primarily attracts our concern here. In balancing the defendant's interests with the undisputed interest of trial courts to "facilitate the search for truth to the end of producing a just

---

[1] *People v Florinchi,* 84 Mich App 128; 269 NW2d 500 (1978), lv den 405 Mich 828 (1979), *People v Pace,* 102 Mich App 522; 302 NW2d 216 (1980), and *People v Turner,* 120 Mich App 23; 328 NW2d 5 (1982).

result," *id.,* 484, the court is compelled to utilize
the remedy of suppression "only in the most egre-
gious cases" where other remedies such as continu-
ance would not serve to protect the foregoing
interests.[2] *Id.,* 487. The *Taylor* Court concluded
that the defendant there was not entitled to a
remedy for the prosecutor's nondisclosure of a
letter written by defendant himself, since defen-
dant had obvious knowledge of it independent of
discovery. *Id.,* 487-488.

Applying this analysis to the facts of this case,
we initially agree that the prosecution violated the
terms of the informal discovery agreement, in
which it agreed to supply defense counsel with all
medical documentation. Although it is true that
the test results in question were not available to
the prosecution until after the trial began, it had
discovered just prior to trial that the rape kit
existed but had inadvertently not been tested. At
the time the prosecutor instructed the lab techni-
cian to examine the kit samples, he had an affir-
mative duty to advise defense counsel, who pur-
portedly had been apprised that there would be no
medical substantiation of the victim's testimony,
that this evidence was being developed. His deci-
sion to notify defense counsel of the existence of
the tests only after they were concluded, at the
time he sought to admit their results at trial,
constituted a breach of the agreement. 159 Mich
App 476, n 10.

However, we are not persuaded that the actions
the trial court undertook to remedy the breach
were an abuse of discretion. When defense counsel
initially objected to the introduction of the evi-

---

[2] Compare the trial court's discretion to allow the late endorsement
of witnesses, which it is encouraged to do following the grant of a
continuance so as to obviate any protential prejudice. *People v Suchy,*
143 Mich App 136, 141; 371 NW2d 502 (1985); *People v Cyr,* 113 Mich
App 213, 224; 317 NW2d 857 (1982).

dence concerning the sexual assault kit samples, the trial court reserved its ruling to allow counsel the opportunity to speak with the laboratory technician who had initially examined the kit samples. The court further instructed the prosecutor to have the technician available at a set time that afternoon for questioning. However, defense counsel did not avail herself of this opportunity. Later, after Dr. Nugent's testimony, the trial court asked defendant's attorney whether she desired a continuance in order to consult with an independent expert concerning the kit samples. Trial was adjourned to give defendant's attorney that opportunity. When trial reconvened the next morning, defense counsel stated that the defense had elected not to provide any medical expert testimony on defendant's behalf.

Since the defense was granted the opportunity to question the lab technician prior to the admission of the evidence, and since a continuance was given to allow it an opportunity to consult with an independent expert, we do not believe that defendant was deprived of his right to a fair trial by the introduction of the evidence.

Further, defendant's general allegations of surprise and prejudice do not alter our result. 159 Mich App 486, n 26. The only possible prejudice resulting from the failure to divulge this inculpatory evidence was inadequate preparation for cross-examination. This, of course, was remedied by the trial court. *People v McConnell,* 124 Mich App 672, 681; 335 NW2d 226 (1983). Although defense counsel advised the trial court that she would not have employed a strategy of denying sexual contact with the child had she been aware of the potential positive test results, she did not advise the court what alternative defense would have been asserted, and we are not aware of any

where, as here, the defense of consent is not available. Reversal is not required here merely because the evidence was of an incriminating nature. 159 Mich App 481 n 19, 486.

Defendant's other claims of errors can be summarily rejected.

Defendant asserts that the trial court erred by allowing the victim's mother to testify, over defendant's objection of hearsay, about the description of the offense related to her by the victim the morning following the offense. We find no abuse of discretion in the trial court's admission of the hearsay statements as excited utterances. *People v Foreman,* 161 Mich App 14, 20-23; 410 NW2d 289 (1986); *People v Draper,* 150 Mich App 481, 486; 389 NW2d 89 (1986); *People v Soles,* 143 Mich App 433, 437-438; 372 NW2d 588 (1985), lv den 424 Mich 863 (1985).

Next, defendant argues that the court erred in denying his motion for directed verdict which had been made on the basis that venue of the Kent Circuit Court had not been established. We disagree. The complainant's testimony that the offense occurred within a three to thirty minute drive to her house which was located within the county created a sufficient factual dispute to warrant submission of the issue to the jury. *People v Belanger,* 120 Mich App 752, 757; 327 NW2d 554 (1982); *People v Ragland,* 14 Mich App 425, 427; 165 NW2d 639 (1968).

Defendant was not denied his right to be informed of the nature of the accusations against him by the alleged vagueness of the amended information, which charged defendant with committing two acts of sexual penetration against the victim while she was under the age of thirteen and which likewise specified the date and location of the alleged offenses. Under these circumstances,

the information was sufficiently specific to enable defendant to prepare his defense, and a conviction or acquittal on the charges would bar any subsequent charges against defendant for the same offense. *People v Adams,* 389 Mich 222, 242-244; 205 NW2d 415 (1973).

Finally, while acknowledging that his sentences fall within the minimum sentence range recommended by the guidelines, defendant maintains that they should nonetheless be vacated as excessive and an abuse of trial court's discretion. After reviewing the record, our collective consciences are not shocked by the sentences. *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983).

Affirmed.