# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HAKEEM AL-HISNAWI-SALMAN, a/k/a
HAKEEM SALMANALHISNAWI, a/k/a
HAKEEM AL-HISNAWI,

Defendant-Appellant.

UNPUBLISHED
September 13, 2016

No. 326445
Wayne Circuit Court
LC Nos. 14-003397-FC;
          14-003398-FH

Before: CAVANAGH, P.J., and SAAD and FORT HOOD, JJ.

PER CURIAM.

In LC No. 14-003397-FC, defendant was charged with assault with intent to commit murder, MCL 750.83, assault with intent to do great bodily harm less than murder, MCL 750.84, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was separately charged in LC No. 14-003398-FH with absconding while on bond, MCL 750.199a, and malicious destruction of police property, MCL 750.377b. The two cases were consolidated for trial. A jury found defendant guilty of the lesser offenses of assault with intent to do great bodily harm and felonious assault, MCL 750.82, in addition to the felon-in-possession and felony-firearm charges, and also found defendant guilty of absconding while on bond and malicious destruction of police property. The trial court sentenced defendant in LC No. 14-003397-FC to concurrent sentences of 4 to 10 years' imprisonment for the assault with intent to do great bodily harm conviction, one to four years' imprisonment for the felonious assault conviction, and two to five years' imprisonment for the felon-in-possession conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. The court also sentenced defendant in LC No. 14-003398-FH to 23 months to 4 years' imprisonment each for the absconding and malicious destruction of property convictions, which were to be served concurrently with defendant's sentences in the other case. Defendant appeals as of right. We affirm.

This case arises from a shooting incident outside a pizza store in Detroit. Samer Haidar, a deliveryman for the Pizza Place, delivered a pizza late to three men, one of whom was defendant. An exchange occurred, involving curse words being exchanged between Haidar and defendant. Haidar returned to the Pizza Place, and told his manager, Ahmed Chakkour, what had

-1-

occurred.  Shortly thereafter, defendant arrived at the store yelling and screaming, and asking for the owner or manager.  Defendant told Chakkour and other employees that Haidar had sworn at him, and defendant threatened to kill Haidar if he saw him again.  The other two men from the delivery location were with defendant, and all three men eventually left the store and went outside.  As defendant and the two men were outside, one of the men confronted another employee of the pizza store and wanted to fight.  Chakkour went outside to intervene.  At that time, defendant was in his vehicle.  According to witnesses, defendant had a handgun, which he fired at Chakkour, who was shot in the leg.  Another store employee, Mwafak Hariri, was outside and screamed when Chakkour was shot.  Defendant then pointed the gun in the direction of Hariri and fired a shot, but Hariri was not struck.  Security cameras inside the pizza store captured events leading up to the shooting, but the shooting was not recorded because it occurred outside the store.

After defendant was charged in the pizza store shooting, he was released on bond, but required to wear a tether as a condition of his bond.  In March 2014, just two days before defendant was scheduled to appear in court for his preliminary examination, the county's tether unit received notice that there was a problem with defendant's tether.  Officers who responded to defendant's location discovered that the tether had been cut off and left in the yard at that location.  Defendant was not present.

## I. DISCOVERY VIOLATIONS

Defendant argues on appeal that numerous discovery violations denied him his right to due process and a fair trial, and that the trial court erred in denying his motion to dismiss due to the many violations.  We disagree.

This Court reviews de novo whether a defendant received due process.  *People v Odom*, 276 Mich App 407, 421; 740 NW2d 557 (2007).  "For a due process violation to result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense."  *Id*. at 421–422.  We review for an abuse of discretion a trial court's decision whether to grant or deny a motion to dismiss based on discovery violations.  MCR 6.201(J); *People v Davie (After Remand)*, 225 Mich App 592, 597–598; 571 NW2d 229 (1997).

Discovery was an ongoing problem in this case leading up to trial, resulting in defense demands for discovery, motions to compel discovery, and a motion to dismiss filed shortly before trial, which was denied.  The parties apparently believed that the discovery issues had been resolved by the time trial started, but it was discovered during trial that several items from a police file had not been produced.  The missing items included a "team report" prepared by Officer Derrick Maye, a police sketch and photographs of the scene, the name of a possible suspect, CRISNET reports related to defendant, "CAD"[1] reports, a photograph of the pizza shop's menu,[2] and an officer's notes regarding two other individuals.  The trial court agreed that

---

[1] "CAD" stands for Computer Aided Dispatch.

[2] The menu was in English even though some employees were unable to converse in English.

the failure to produce these materials before trial violated its discovery order. The missing items were provided to the defense, and the trial court agreed to adjourn trial to allow defense counsel an opportunity to review the items and evaluate their significance for purposes of trial. Trial was adjourned for approximately two months, until all of the jurors could convene again. In the interim, the court took defendant's renewed motion to dismiss under advisement.

Before trial resumed, the trial court heard defendant's motion to dismiss based on the discovery violations. Defendant argued that dismissal was appropriate under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), because the late-produced discovery would have been useful either to impeach witnesses or as exculpatory evidence. In particular, defendant argued that the newly produced information showed that the shooter was described as wearing both a black shirt and a green shirt, whereas the video recording showed defendant entering the store wearing a white shirt. The trial court denied the motion to dismiss, noting that defendant had now received all discovery materials, that the prosecution's witnesses had previously been questioned about inconsistencies regarding the color of the shooter's shirt, and that no exculpatory evidence had been withheld.

After trial resumed, the parties discovered that a ballistics report regarding analysis of a shell casing recovered from the scene had not been provided. The report was obtained and it revealed that the single casing recovered from the crime scene was identified as a nine-millimeter casing, which was inconsistent with the evidence technician's testimony that she had collected a single .380-caliber casing from the scene. The trial court rejected defendant's argument that the report was exculpatory, given that there was no evidence identifying the weapon used in the shooting. However, the trial court allowed defense counsel to recall the evidence technician to address the inconsistency between her labelling of the casing and the ballistics report.

Defendant argues on appeal that the trial court erred by denying his motion to dismiss. Defendant argues that the discovery violations included potentially exculpatory evidence and that the late production of the evidence deprived him of his right to present a defense. Defendant further argues that the prosecutor violated her duty under *Brady,* 373 US 83, to disclose known exculpatory evidence to the defense. We conclude that the record does not establish a *Brady* violation, and that the trial court did not abuse its discretion in addressing and resolving the discovery violations, or in denying defendant's motion to dismiss.

"When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). If granting a continuance would not serve to protect the above interests, only then should the trial court utilize other, more severe remedies. *People v Clark*, 164 Mich App 224, 229-230; 416 NW2d 390 (1987). The right to due process under US Const, Am XIV, requires that the prosecution not suppress material evidence favorable to the defense. *Brady,* 373 US 83; *People v Fox (After Remand)*, 232 Mich App 541, 549; 591 NW2d 384 (1998). To prove a *Brady* violation, the defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) viewed in its totality, the evidence is material. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. at 150. To establish

materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

Where the prosecution does not suppress evidence, but only fails to preserve it, a different test applies. If the exculpatory value of the unpreserved evidence is indeterminate and only "potentially useful" to the defendant, the defendant has the burden of proving that the government acted in bad faith in failing to preserve the evidence. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988); *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992).

We disagree with defendant's argument that he was prejudiced by the late production of several items, such that dismissal was the only appropriate remedy. Defendant argues that he was prejudiced by the late production of the "team report" because it stated that a 911 caller reported that the shooter wore a green shirt, whereas the video recording showed that defendant was wearing a white shirt when he entered the store. It is apparent, however, that the defense was aware of discrepancies in the descriptions of the shooter before the team report was provided. Before trial was adjourned, Chakkour had stated that the shooter was wearing a black shirt, and defense counsel elicited testimony from Haidar, who called 911 after the shooting, that he reported that the shooter was wearing a green shirt. Moreover, after the trial resumed, Officers Maye and Officer John Mitchell both testified that Chakkour had stated that the shooter was wearing a black short-sleeved shirt, whereas Haidar had stated that the shooter wore a green shirt. In sum, it is apparent that defense counsel was aware of the discrepancies in the descriptions of the shooter's clothing before the team report was produced and, more significantly, that the jury was fully informed of the conflicting descriptions. Defendant has not demonstrated that he was prejudiced by the late disclosure of the team report.

Defendant's arguments regarding the CAD reports also pertain to the disclosure that the shooter was identified as wearing a green shirt. As indicated, because the defense was aware of that information before the CAD reports were produced, and the conflicting descriptions of the shooter were fully presented to the jury, there is no basis for concluding that defendant was prejudiced by the late production of these reports.

To the extent defendant complains that the actual 911 recordings were no longer available, that issue does not involve a discovery violation, but a failure to preserve evidence. There is no evidence that the recordings were destroyed in bad faith. Indeed, transcripts of the contents of those calls were created and available for use at trial. Absent a showing of bad faith in failing to preserve the actual recordings, defendant is not entitled to relief. *Youngblood*, 488 US at 57-58; see also *Johnson*, 197 Mich App at 365.

Defendant also complains that a crime scene sketch and numerous photographs were not produced until midtrial. Defendant fails to explain how these items were exculpatory, or how he was prejudiced by their late production. After the continuance, the defense introduced a sketch of the crime scene as evidence, so the jury was aware of that evidence. There is no basis for concluding that the late production of this evidence prejudiced defendant's right to a fair trial.

Defendant also complains about the late production of the ballistics report, which identified the casing recovered from the scene as a nine-millimeter casing. This evidence conflicted with the testimony of Mary Gross, the evidence technician, who testified that the casing she collected was for .380-caliber ammunition. First, this evidence was not suppressed because it was produced at trial. Second, there is no basis for concluding that defendant was prejudiced by the late production of the report. The fact that a shooting occurred was independently established by the testimony of witnesses who described seeing and hearing the shooting, and by Chakkour's gunshot wound. Because a weapon was never recovered and there was no testimony identifying the type of weapon used, the caliber of the casing was of little evidentiary value. Indeed, the recovered casing could not conclusively be linked to the charged shooting. Moreover, after the ballistics report was produced, the trial court permitted defendant to recall Gross to question her about the discrepancy between the caliber of ammunition identified in her testimony and the caliber of ammunition identified in the report. Thus, the jury was fully aware of this discrepancy in the evidence, a fact defense counsel emphasized during closing argument in an attempt to discredit the reliability of the police investigation. Because defendant had access to the report at trial, was permitted to recall Gross to question her about the conflicts between her testimony and the contents of the report, and the defense was able to use the report to question the reliability of the prosecution's evidence, defendant cannot establish that he was prejudiced by the late production of the report.

Finally, defendant claims that the video recording from the pizza store was missing 14 seconds, which defendant maintains is proof that the prosecution suppressed material evidence. At trial, defendant moved for a mistrial, arguing that the video recording that was shown to the jury differed from the recording provided to defense counsel before trial. Counsel explained that his copy displayed a time stamp on the recording, whereas the recording that was shown to the jury did not, thereby indicating that it had been altered. The prosecutor asserted that there was only one recording, which contained a time display. However, the recording was enlarged when it was shown to the jury, which apparently cut off the time display. Defense counsel argued that the time display was important because "there are chunks of time missing from the copy of the video that we got" and 14 seconds were missing right after the time of the shooting. The trial court responded that counsel could play the defense copy of the recording for the jury "and make whatever arguments you want to make for the jury." The court denied defendant's motion for a mistrial.

On appeal, defendant does not complain about the lack of a time display on the video recording shown to the jury, but now argues that the 14-second gap in a portion of the video recording is evidence that the prosecution intentionally suppressed evidence. The record does not support this argument. Initially, the defense received its copy of the video before trial. Although counsel was aware that there were "chunks of time missing from the . . . video that we got," the defense did not move for a mistrial or seek other relief on this basis. Moreover, there is no evidence that the police tampered with or failed to preserve portions of the video. Officer Aaron Colwell testified that some cameras are motion activated and, depending on the type of recording system, "you may have chunks of time missing." Sergeant Todd Eby testified that the video recording was sent to him by e-mail, and he forwarded it to Officer Colwell. Officer Colwell testified that he downloaded the video to a CD, which was the video shown at trial. Sergeant Eby and Officer Colwell both denied making any changes to the video recording they each received, or even knowing how to do that. In sum, there was no evidence that the video

-5-

recording received by the police actually contained a 14-second portion that was not included in the recording that was provided to the defense and played at trial. Thus, the record does not support defendant's claim that evidence was suppressed or not preserved.

In addition, there is no basis for concluding that the alleged missing 14 seconds would have been exculpatory. Haidar testified that the pizza store only had cameras inside the store, not outside. Sergeant Eby also testified that the recording he viewed showed the inside lobby area of the store. The video depicted defendant entering the store before the shooting, but it did not show the actual shooting, which occurred outside the store. In addition, defense counsel asserted that the missing 14 seconds would have involved the time period after the shooting. Accordingly, there is no reason to believe that any video of this 14-second period, assuming it existed, would have contained information favorable to defendant.

In sum, it is apparent that an entire police file and a forensic report were not timely produced before trial, and that the 911 recordings were not preserved. However, there was other evidence of the content of the 911 calls, and the remaining materials were provided to the defense during trial. In addition, the trial court granted a lengthy continuance, thereby affording the defense sufficient time to review the materials, and defendant was able to use the materials at trial to highlight inconsistencies in witness testimony and the identification of the shooter. The trial court reserved ruling on defendant's motion to dismiss until it was appraised of all the relevant circumstances. The trial court's approach to remedying the discovery problems appropriately balanced the competing interests of the parties, while ensuring fairness to the defense. The court protected defendant's right to a fair trial by ensuring that he received all missing discovery materials during trial, and by affording counsel an adequate opportunity to review the materials. The court also gave defendant an opportunity to demonstrate whether he was prejudiced by the late production of the materials, and it did not err in finding that defendant failed to demonstrate that he was prejudiced by the late production. Accordingly, defendant's claim fails.

## II. JOINDER

Defendant next argues that the trial court erred in joining his two cases for trial. "To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate." *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). The trial court's findings of fact are reviewed for clear error, and its application of the law to the facts is reviewed de novo. *Id*. "The court's ultimate ruling on a motion to sever is reviewed for an abuse of discretion." *People v Girard*, 269 Mich App 15, 17; 709 NW2d 229 (2005) (citation omitted).

MCR 6.120(B) addresses the joinder of separate informations against the same defendant:

On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C) [which requires the severance of unrelated offenses], the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to

promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

(3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

Here, the two cases were related because the absconding case arose out of defendant's violation of the conditions of his bond for the pizza store shooting case. The trial court observed that if the two cases were tried separately, evidence concerning each offense would be admissible at a trial of the other offense under MRE 404(b).[3] More specifically, the evidence that defendant removed his tether and absconded two days before his scheduled preliminary examination in the pizza store shooting case would have been relevant evidence of flight to show defendant's consciousness of guilt for that offense.[4] Because the charges in the absconding case involved defendant's violation of the terms of his bond in the pizza store shooting case, and evidence from one case would have been admissible in the other case, the two cases were sufficiently related and the trial court did not abuse its discretion in joining them for trial. *Girard*, 269 Mich App at 17. Defendant's reliance on *People v Tobey,* 401 Mich 141; 257 NW2d 537 (1977), is misplaced. As our Supreme Court explained in *Williams,* 483 Mich at 228, "the provisions of MCR 6.120 superseded *Tobey*" because the court rules were adopted after that case was decided and "[t]he unambiguous language of MCR 6.120 permits joinder in a greater range of circumstances than did *Tobey*."

---

[3] MRE 404(b) permits evidence of other crimes, wrongs, or acts to be admitted if it is (1) offered for a proper purpose, i.e., not to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice under MRE 403. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

[4] The prosecutor filed a motion to admit the evidence of defendant's flight in the pizza store shooting case, which the trial court granted.

## III. PROSECUTORIAL MISCONDUCT

Defendant also argues that misconduct by the prosecutor denied him a fair trial. We disagree. "Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Questions of prosecutorial misconduct are decided on a case-by-case basis, and a prosecutor's remarks must be evaluated in context, including the defense arguments, and their relationship to the evidence admitted at trial. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014); *Dobek*, 274 Mich App at 64. "Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011).

Defendant initially argues that the prosecution's discovery violations constituted misconduct. As previously explained in section I, while there were discovery violations, the trial court protected defendant's right to a fair trial by granting a continuance to allow the defense sufficient time to review and address the late-produced discovery items. The late production of certain items did not prejudice defendant's right to a fair trial, and defendant has failed to establish that any missing evidence was material or favorable to defendant. Accordingly, defendant is not entitled to relief on this basis.

Defendant's remaining claims of misconduct relate to the prosecutor's remarks in closing and rebuttal arguments. Because defendant did not object to the challenged remarks at trial, our review of these claims is limited to plain error affecting defendant's substantial rights. *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014). Error requiring reversal will not be found when a curative instruction could have displaced any prejudicial effect of the prosecutor's misconduct. *People v Johnigan*, 265 Mich App 463, 467; 696 NW2d 724 (2005).

Defendant complains that the prosecutor improperly vouched for the credibility of her witnesses when arguing that Haidar, Chakkour, and Hariri "were honest, consistent and have never wavered about who the shooter was on August 30th." A prosecutor may "comment on his own witnesses' credibility during closing argument, specifically when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). However, a prosecutor is not permitted to vouch for the credibility of a prosecution witness by implying that he or she possesses "special knowledge" of the witness's truthfulness. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). Simply because the prosecutor referred to the witnesses as "honest," "credible," and "consistent" does not indicate that she was personally vouching for their credibility. The prosecutor's argument was focused on reasons, grounded in the evidence and the manner in which the witnesses testified at trial, for why the witnesses should be believed. The prosecutor did not refer to any personal information, not presented at trial, to suggest that she had some special knowledge that the witnesses were credible. Accordingly, the remarks did not constitute prosecutorial misconduct.

Defendant also argues that the prosecutor improperly denigrated the defense in the following remarks during rebuttal argument:

The testimony – you often hear lawyers talk about various things like, you know, we want to protect, protect the process and beat on the thing. People are not being treated fairly. People are not being treated fairly. That's all you heard in their argument. Went on for about eight minutes. But no talk about the testimony. No talk whatsoever about the facts that happened on August 30th. You know why? Because eyewitnesses to what took place were credible and they were consistent. They've never wavered from who, in fact, they made the observations of on August 30th. Not one. That's why you didn't hear that. Not one.

We do not agree. First, these remarks were responsive to defense counsel's closing argument. A prosecutor may fairly respond to an issue raised by the defendant. *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). Second, the prosecutor's remarks did not involve a personal attack on defense counsel's character or veracity. See *People v Unger,* 278 Mich App 210, 236; 749 NW2d 272 (2008). The prosecutor's comments were not directed at defense counsel personally, but rather on the lack of evidence to support the defense arguments. The prosecutor simply pointed out that the defense arguments were not focused on the actual testimony presented in this case. It was not a denigration of the defense to urge the jury to focus on the evidence, and not arguments that lacked evidentiary support. Accordingly, there was no plain error.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Henry William Saad
/s/ Karen M. Fort Hood