*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 21, 2023

Plaintiff-Appellant,

v

No. 363580
Wayne Circuit Court
LC No. 04-012890-01-FC

THELONIOUS DESHANE-EAR SEARCY,

Defendant-Appellee.

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

The prosecution appeals the trial court's October 3, 2022 order granting the motion of defendant to dismiss his criminal charges of first-degree murder, MCL 750.316(1)(a); assault with intent to murder (AWIM), MCL 750.83; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] We reverse and remand for further proceedings.

## I. BACKGROUND

On September 5, 2004, a shooting occurred at the corner of Conner Street and Whithorn Street near the Detroit City Airport in Detroit. That night, an event known as a "Black Party" was taking place in the area. The area was crowded with traffic and pedestrians. At about 9:00 p.m., several eyewitnesses saw a man approach the back of a silver Corvette, which contained the murder victim and the assault victim, and begin shooting. A bullet struck the assault victim's hip, causing him injury, and the murder victim died from multiple gunshot wounds. Although some eyewitnesses believed the gunshots came from two separate guns, the eyewitnesses did not see a

---

[1] As will be explained below, defendant was convicted of first-degree murder, AWIM, and felony-firearm in 2005. Defendant was granted a new trial in 2021. *People v Searcy (Searcy II)*, unpublished per curiam opinion of the Court of Appeals, issued February 11, 2021 (Docket No. 349169), pp 12-13. The trial court judge who presided over defendant's first trial did not preside over the proceedings on remand. However, for purposes of conciseness, we will refer to one "trial court."

second shooter. Latasha Boatright, who witnessed the shootings, saw the shooter run into a nearby party store. Casings from two different weapons were found at the scene, including seven .45-caliber casings and eight .40-caliber casings.

Three eyewitnesses identified defendant as the shooter from a photographic lineup. On the morning of November 30, 2004, law enforcement went to an apartment in an attempt to locate and arrest defendant. Officers had to force entry into the apartment, and defendant was found hiding behind drywall. Officers discovered a .45-caliber semiautomatic handgun in the bedroom where defendant was located. Ballistics testing revealed the .45-caliber casings found at the scene of the shooting were fired from that gun.

Defendant was charged with first-degree premeditated murder, AWIM, and felony-firearm. Trial was held over several days in May 2005. The prosecution presented a myriad of witnesses, and four eyewitnesses identified defendant as the shooter at trial. The prosecutor's theory revolved around a claim that defendant mistakenly shot the murder victim in an attempt to kill DeAnthony Witcher, who drove a Corvette that looked similar to the murder victim's Corvette. Witcher testified defendant was upset with him after defendant lost several hundred dollars while gambling at Witcher's home in the summer of 2003. According to Witcher, in November 2003, defendant shot him and continued to threaten him. Although Witcher did not see or hear the shooting on September 5, 2004, he was in the area in a silver Corvette.

Defendant did not testify at trial. Instead, he presented the testimony of several friends and family members, each of whom testified that defendant was at a barbecue at the home of his mother throughout the evening of September 5, 2004. Additionally, defendant's mother and grandmother testified the apartment where defendant was arrested belonged to his grandmother, and defendant was merely visiting at the time of his arrest. Defendant's grandmother explained the .45-caliber gun did not belong to defendant and was left in her apartment by a man named Jeffrey Daniels, who had driven her home one day and was killed in September 2004.

The jury convicted defendant as charged, and he was sentenced. Defendant appealed, and this Court affirmed his convictions. *People v Searcy (Searcy I)*, unpublished per curiam opinion of the Court of Appeals, issued October 26, 2006 (Docket No. 263347). Defendant applied for leave to appeal from this Court's decision, and our Supreme Court denied leave. *People v Searcy*, 477 Mich 1112 (2007). Thereafter, defendant filed two motions for relief from judgment, each of which was denied by the trial court.

In August 2015, Vincent Smothers, who was in prison and had already confessed to being paid to commit multiple murders, wrote a letter to defendant, admitting he killed the murder victim "during a botched robbery on Whithorn and Conners [sic] across from the city airport." In December 2015, Smothers executed an affidavit, which detailed his involvement in the September 2004 crimes. Specifically, Smothers averred he shot the murder victim with a .40-caliber handgun. Smothers also implicated Daniels in the crimes, indicating Daniels fired a .45-caliber handgun near the murder victim's Corvette. According to Smothers, he tasked Daniels with discarding the guns.

In 2017, defendant filed his third motion for relief from judgment. An evidentiary hearing took place over several days in March and May 2018. Smothers testified and confessed to murdering the murder victim. During the hearing, it was discovered a bullet removed from the

murder victim's chest had conflicting descriptions. After the envelope was opened and the contents were examined, it was determined the envelope contained "a .40 S&W . . . fired bullet." On December 3, 2018, the trial court issued an opinion and order, denying defendant's third motion for relief from judgment. Defendant appealed, and this Court reversed and remanded for a new trial. *People v Searcy (Searcy II)*, unpublished per curiam opinion of the Court of Appeals, issued February 11, 2021 (Docket No. 349169), pp 12-13. The prosecution sought leave to appeal this decision, which was denied. *People v Searcy*, 507 Mich 1007 (2021).

On April 15, 2022, defendant moved for dismissal of his criminal charges based on allegations that his due-process rights were violated in relation to the 2005 trial. In relevant part, defendant alleged: (1) the prosecution suppressed information about the bullet removed from the murder victim's chest; (2) the prosecution either suppressed certain video footage from the party store located near the scene of the shooting or members of law enforcement destroyed the video footage; and (3) the prosecution failed to provide defendant with information about Witcher's arrest history. The prosecution opposed the motion.

In an October 3, 2022 opinion and order, the trial court granted defendant's motion, concluding due-process violations occurred in relation to the 2005 trial. The trial court dismissed defendant's criminal charges with prejudice. This appeal followed.

## II. STANDARDS OF REVIEW

"[T]his Court . . . reviews de novo constitutional claims. . . ." *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020). "This Court reviews a trial court's decision on a motion to dismiss charges against a defendant for an abuse of discretion." *People v Ali*, 328 Mich App 538, 541; 938 NW2d 783 (2019) (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Montague*, 338 Mich App 29, 37; 979 NW2d 406 (2021) (quotation marks and citation omitted). "The trial court's factual findings are reviewed for clear error." *People v Tardy*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360026); slip op at 4. "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id*. at ___; slip op at 4 (quotation marks and citation omitted).

## III. ANALYSIS

### A. ALLEGED DUE-PROCESS VIOLATIONS IN RELATION TO THE BULLET REMOVED FROM THE MURDER VICTIM'S CHEST AND WITCHER'S ARREST RECORD

The prosecution argues the trial court improperly dismissed defendant's criminal charges based on its conclusion that due-process violations occurred in relation to the alleged suppression of the information related to the bullet removed from the murder victim's chest and Witcher's arrest record. We agree, although for reasons different from those raised by the prosecution on appeal.

Defendant essentially argues his due-process rights were violated at the 2005 trial because the bullet, information concerning the bullet, and Witcher's arrest history were suppressed in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due

process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. "To establish a *Brady* violation, a defendant must establish that (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Burger*, 331 Mich App at 517 (quotation marks and citation omitted). "The government is held responsible for evidence within its control, even evidence unknown to the prosecution, without regard to the prosecution's good or bad faith. . . . Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. (quotation marks and citations omitted).

Defendant and the prosecution focus their attention on events that occurred between 2004 and 2018. However, defendant has already been granted a new trial, rendering most of the parties' arguments irrelevant. To the extent the trial court sought to punish the prosecution for due-process violations that occurred in 2005 when dismissing the criminal charges, this was improper. In *People v Aceval*, 282 Mich App 379, 391; 764 NW2d 285 (2009), this Court explained:

> [T]he crux of the due process analysis in cases of alleged prosecutorial misconduct is whether the defendant received a fair trial. The remedy when a defendant receives an unfair trial because of prosecutorial misconduct is a new and, presumably, fair trial. This remedy naturally flows from the type of harm that the defendant has suffered. It does not follow that a due process violation should bar retrial, because such a remedy would be unduly broad and would fail to address the specific harm the defendant has suffered. [Citations omitted.]

Importantly, "barring retrial on the basis of due process grounds would amount to punishment of society for [the] misdeeds of a prosecutor because it would permit the accused to go free." *Id*. (alteration in original, quotation marks omitted), citing *Brady*, 373 US at 87. Although defendant essentially urges us to affirm the trial court's decision based on a conclusion the prosecution engaged in poor conduct in relation to the 2005 trial, this remedy is not consistent with the holding in *Aceval*. In *Aceval*, 282 Mich App at 392, we stated:

> Assuming that the acts of the trial judge and the prosecutor in this case violated Michigan's Rules of Professional Conduct, and Code of Judicial Conduct, and were clearly opprobrious, the remedy for their wrongs is accomplished in other forums, such as the Attorney Discipline Board and the Judicial Tenure Commission. These codes, however, do not confer upon a defendant any type of constitutional right or remedy. Rather, the particular constitutional right determines the constitutional remedy and these codes play no part in such decisions. For these reasons, we do not take the opportunity here to create a new remedy for a due process violation arising out of prosecutorial and judicial misconduct. [Citations omitted.]

The remedy for any *Brady* violations in relation to the 2005 trial is retrial—not dismissal.[2] We acknowledge that defendant argues dismissal was proper under MCR 6.201, which governs

---

[2] In so holding, we are in no way commenting on the prosecution's conduct in relation to the 2005 trial. Indeed, we disagree that the bullet removed from the murder victim's chest was suppressed.

discovery in a criminal proceeding. *People v Gilmore*, 222 Mich App 442, 448; 564 NW2d 158 (1997). Under MCR 6.201(B)(1): "Upon request, the prosecuting attorney must provide each defendant . . . any exculpatory information or evidence known to the prosecuting attorney[.]" If the prosecution fails to comply with MCR 6.201(B), the trial court, in its discretion, "may order the party to provide the discovery or permit the inspection of materials not previously disclosed, . . . or enter such other order as it deems just under the circumstances." MCR 6.201(J). "When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). If granting a continuance would not serve to protect the above interests, only then should the trial court utilize other, more severe remedies. *People v Clark*, 164 Mich App 224, 229-230; 416 NW2d 390 (1987).[3]

There are no current discovery violations in relation to the bullet or Witcher's arrest history. Defendant has been aware of the bullet and that it was not fired from the .45-caliber gun associated with defendant since 2018. Defendant is also aware of Witcher's arrest record. Therefore, if defendant is tried a second time, defendant's due-process rights to a fair trial and to present a defense will not be in jeopardy. The trial court abused its discretion by dismissing the criminal charges based on purported due-process violations concerning the bullet and Witcher's arrest record.

---

The autopsy report, which reflected four bullets or bullet fragments were removed from the murder victim's body and turned over to law enforcement, was admitted into evidence at the preliminary examination. At the preliminary examination, trial counsel stated: "I have seen the [autopsy] report of the deceased here." The bullet removed from the murder victim's chest was assigned Evidence Tag Number 07191604. In September 2004, which was before defendant was arrested and found in the proximity of the .45-caliber gun in November 2004, the bullet was mislabeled as "a nine millimeter shell casing." Later, in a January 31, 2005 report, Evidence Tag Number 07191604 was labeled as a ".40 caliber, Metal jacket bullet." This information was contained in a document labeled "Laboratory Analysis," which was People's Exhibit 23. While the *Brady* doctrine does not place a burden on the defense to discover *Brady* information, *People v Chenault*, 495 Mich 142, 152-155; 845 NW2d 731 (2014), trial counsel should have been aware of the existence of the bullets removed from the murder victim's body. Trial counsel would have been able to examine the bullets on request, and move to have them tested. MCR 6.201(A)(6). Importantly, "[t]he *Brady* rule is aimed at defining an important prosecutorial duty; it is not a tool to ensure competent defense counsel." *Chenault*, 495 Mich at 155.

[3] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *People v Craig*, 342 Mich App 217, 226 n 3; 994 NW2d 792 (2022) (quotation marks and citation omitted).

B.  ALLEGED DUE-PROCESS VIOLATION IN RELATION TO THE VIDEO FOOTAGE
FROM THE PARTY STORE

The prosecution next argues that the trial court improperly concluded due-process violations occurred in relation to the video footage from the party store.  We agree.

The prosecution first disputes the video footage from the party store was in the possession of law enforcement or the prosecution at any point in time.  Record evidence establishes otherwise. After several eyewitnesses reported seeing the shooter enter a party store near the scene of the shooting,[4] Officer Charles Zwicker filled out an evidence tag.  The description of the evidence was "VHS tape," which was taken from 11742 Conner Street.  The evidence was assigned Evidence Tag Number 07170504.  According to Officer Velma Tutt, 11742 Conner Street was the address of the party store, and the prosecution appears to concede this on appeal.

On September 10, 2004, the prosecutor signed a form entitled "HOMICIDE WARRANT CHECKLIST AND FOLLOW-UP REQUEST."  The form included this information:

MISCELLANEOUS INFO    Video from squad car + party store

A laboratory analysis form, which was completed by Officer Stephen Yakimovich, only reflects one VHS tape was assigned Evidence Number 07170504 and was "record[ed] onto [a] VHS tape and DVD."  The evidence was turned over to Sergeant William Anderson, who was the officer in charge.  Additionally, the form reflected still images were taken from the tape.  Some of the images, which are of poor quality, appear to be taken from a motor vehicle.  Other images appear to be taken from a party store.  The prosecution was unable to provide a feasible explanation for these images.  While the prosecution is correct the laboratory analysis form only reflects one video was analyzed, and it is clear the prosecution was in possession of a video from a semimarked police vehicle,[5] there was sufficient evidence to determine the Detroit Police Department was in possession of video footage from the party store.  The trial court did not clearly err by making this finding based on the record evidence.

The trial court concluded a *Brady* violation occurred with respect to the video footage from the party store because the prosecution failed to provide it to the defense.  However, it is clear the video footage was either destroyed or misplaced, as opposed to suppressed.  See *Burger*, 331 Mich App at 517.  Therefore, *Brady* is not the appropriate constitutional framework from which to decide the arguments on appeal.  We will consider whether the government's failure to preserve the evidence amounts to a due-process violation.

_____

[4] Only one of these witnesses testified at trial.

[5] At the 2005 trial, the prosecution presented a 10-second-long video recording from a camera mounted on the front of a semimarked police vehicle that was in the area of the shootings.  Video footage from the party store was not played at trial.

Under the Due Process Clause of the Fourteenth Amendment, US Const, Am XIV, criminal defendants must be afforded "a meaningful opportunity to present a complete defense." *California v Trombetta*, 467 US 479, 485; 104 S Ct 2528; 81 L Ed 2d 413 (1984). "[T]he Court has developed what might loosely be called the area of constitutionally guaranteed access to evidence" to protect this Fourteenth Amendment right. *Id*. (quotation marks and citation omitted). The Supreme Court has established two tests to determine whether a government's failure to preserve evidence amounts to a due-process violation. "The first test, established in *Trombetta*, applies in cases where the government fails to preserve material exculpatory evidence, while the second test, established in *Arizona v Youngblood*, 488 US 51; 109 S Ct 333; 102 L Ed 2d 281 (1988), applies in cases where the government fails to preserve 'potentially useful' evidence." *United States v Collins*, 799 F3d 554, 569 (CA 6, 2015).[6]

Under *Trombetta*, 467 US at 489, to be deemed constitutionally material, evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." In such cases, "[t]he destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith." *Collins*, 799 F3d at 569 (alteration in original; quotation marks and citation omitted). Meanwhile, under the *Youngblood* standard, in cases where the government fails to preserve "potentially useful" evidence, the defendant must demonstrate "bad faith on the part of the police. . . ." *Youngblood*, 488 US at 58. In order to establish bad faith, a defendant must prove official animus or a conscious effort to suppress exculpatory evidence. *Trombetta*, 467 US at 488. The defendant "bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith." *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992).

Defendant failed to establish a due-process violation under *Trombetta* or *Youngblood*. Four eyewitnesses identified defendant as the shooter. Only one eyewitness, Boatright, testified that she saw defendant enter the party store. Additionally, weeks after the shooting, defendant was found hiding in a bedroom, which contained a .45-caliber gun tied to the .45-caliber casings found at the scene of the shooting. This evidence is relevant to consciousness of guilt. See *People v Parrott*, 335 Mich App 648, 680; 968 NW2d 548 (2021) (a defendant's demeanor, nonresponsive conduct, and statements are relevant to consciousness of guilt). Given this evidence, it cannot be said the video footage is "material exculpatory evidence," see *Collins*, 799 F3d at 569, or "may . . . exonerate[]" defendant, see *People v Hunter*, 201 Mich App 671, 677; 506 NW2d 611 (1993). At best, the video footage would impeach Boatright's contention that she saw the shooter, who she identified as defendant, enter the party store.

Moreover, as relevant to defendant's arguments under *Youngblood*, defendant failed to establish bad faith on the part of the police. The record only supports the video footage from the party store was confiscated and taken into evidence by Officer Zwicker and turned over to Sergeant Anderson. It is unclear what happened to the video footage after it was taken into evidence. After the jury was selected and impaneled, the prosecutor stated: "In regard to discovery, there has been

---

[6] "Caselaw from . . . federal courts is not binding precedent but may be relied on for its persuasive value." *Craig*, 342 Mich App at 299 n 7.

some off-the-record conversations about an in-store video.  I've never seen a copy of that video, and I have been told by Lieutenant Anderson—Sergeant Anderson there is not a copy in the Detroit Police's possession."  Defendant failed to prove official animus or a conscious effort to suppress exculpatory evidence. *Trombetta*, 467 US at 488.  It was defendant's burden to establish bad faith, see *Johnson*, 197 Mich App at 365, and he failed to do so.  In sum, due-process violations did not occur under *Youngblood* or *Trombetta*, and the trial court erred by concluding otherwise.

## IV.  CONCLUSION

The trial court abused its discretion by dismissing the criminal charges.  We reverse and remand for further proceedings.  We do not retain jurisdiction.  Given this holding, we need not consider the remainder of the parties' arguments on appeal.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola